## Gerald G. Scanlan and Judith Scanlan v. David Hopkins and Helon B. Hopkins

[270 A.2d 352]

No. 171-69

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed October 6, 1970

*Ryan, Smith & Carbine,* Rutland, and *Edward A. John,* Brattleboro, for Plaintiffs.

*Weber & Fisher,* Brattleboro, for Defendants.

**Holden, C.J.** This is an action for breach of a covenant against encumbrances. The case was tried by jury with verdict and judgment for the defendants. The plaintiffs appeal.

The property is located on the east side of Putney Road, a part of U.S. Route 5 in Brattleboro, Vermont. The plaintiffs' claim of encumbrance relates to the provisions in a conveyance, dated November 21, 1955, by the defendants to Norman and Dorothy Bonneau. The property granted to the Bonneaus was part of a larger area acquired by the defendants in 1943. The Bonneau parcel lies north and upgrade from land which the defendants later conveyed to the plaintiffs by deed of

March 31, 1965, which contained the warranty in suit. The west line of the Bonneau property is described as running northerly along the east line of Putney Road. The grant by the defendants to Bonneau provides:

> "The Grantors shall within a month after the date hereof provide a culvert of a size and material approved by Edwin W. Culver or other engineer agreed upon by the parties hereto for the purpose of conducting surface water from a point on the westerly edge of the conveyed premises seventy-five (75) feet southerly of the northwest corner thereof, to pond on land of Grantors southerly of the subject premises, but Grantees shall install such culvert on a gravel foundation under engineer's supervision and at Grantees' expense for installation, and the Grantors shall cause drain in front of the Diner to be tarred or otherwise bound for the purpose of preventing the water course from premises northerly of the conveyed premises from eroding or washing into the curvert (sic) and drain herein provided.
>
> "The Grantors for themselves, their heirs, executors, administrators and assigns, shall absolve and save harmless the Grantees, their heirs and assigns, from any responsibility or damage occasioned by water damage by reason of the installation of the fill and grading and culvert as herein provided."

The culvert was installed on the Bonneau property, as provided in the undertaking of their deed and terminates at a headwall located on the north line of lands, then and now, retained by the defendants. When the defendants later conveyed 4.34 acres to the plaintiffs they retained a strip thirty feet wide which separates the Bonneau and Scanlan properties.

The "pond" referred to in the Bonneau deed was included in the 4.34 acres acquired by the plaintiffs in 1965. It covers an area of approximately one-fourth acre and is the natural low point of the surrounding terrain which drains into this basin from all sides. The depth of the pond is normally about two feet, but varies according to the rainfall.

Water on the terrain, to the north of the plaintiffs' land, flows southerly in its natural course into the pond area. Engi-

neering testimony was given at the trial to the effect that the installation of the culvert on the Bonneau property simply enclosed a natural water course that had previously existed, which drained the same area and in the same manner and direction.

The culvert on the Bonneau property originates in a catch basin located on the east shoulder of Putney Road. It continues southeasterly a distance of forty feet to the abutment or headwall at the defendants' north line. At this point it empties into a natural channel that leads across the defendants' strip into the pond area. (See sketch of engineer's survey, Defendants' Exhibit C, attached.)

Up to this point the facts are not in serious dispute. The only conflict in the evidence centered on the negotiations and conversations between the present parties, which led the way to the plaintiffs' purchase of the property in 1965, and, as to this, it is undisputed that the defendants did not inform the plaintiffs of the Bonneau agreement nor inform them of the culvert in question, either in the deed of conveyance or otherwise. The plaintiffs did not discover the presence of the culvert until they inspected the area following an overflow of the land after a seige of high water in 1968.

At the close of all of the evidence both sides moved for a directed verdict. The motions were denied and the cause submitted to the jury on the question of liability, as well as damages instant to the alleged breach of covenant. The plaintiffs contend that the trial court erred in failing to direct a verdict on the issue of the defendants' liability and submit only the question of damages to the jury, as called for in their motion.

The validity of the plaintiffs' claim in this respect depends on whether the undertaking expressed in the defendants' deed to the Bonneaus created, as a matter of law, a servitude against the property subsequently acquired by the plaintiffs. We hold that it does not.

■■ The law requires no technical formula of words to create a servitude against one property in favor of another. The only essential is that the parties make clear their intention to establish an easement. If the language of the instrument is not clear, the intentions of the parties must be

gathered from the total language and from the circumstances which prevailed at the time of the conveyance. And all doubts in this regard are to be resolved in favor of the use of land free from such encumbrances. *Wing* v. *Forest Lawn Cemetery Association*, 15 Cal.2d 472, 130 A.L.R. 120, 126; Thompson, Real Property § 332 (1961 Replacement).

The plaintiffs contend that the agreement concerning the culvert in the defendants' deed to Bonneau established a right in the grantees to discharge surface water through a pipe into the pond. They contend that this imposed a burden on them of maintaining the pond in its preexisting state.

■ The bare language contained in the Bonneau grant does not impose such a burden on the grantors. It obligates the grantors to provide the material for the construction of a culvert "for the purpose of conducting surface water" to the pond on land of the grantors. The grantees agree to accomplish the construction according to certain specifications with an undertaking by the grantors to save the grantees harmless— "from any responsibility or damage occasioned by water damage by reason of the installation of the fill and grading and culvert as herein provided." But there is no obligation on the grantees to maintain the pond in the *status quo*. If a servitude was created against lands retained by the defendants, it must be by implication based on the circumstances shown by the evidence at the time of the grant. *Wheeler* v. *Taylor*, 114 Vt. 33, 37, 39 A.2d 190; *Read, Administrator* v. *Webster*, 95 Vt. 239, 244, 113 A.2d 814.

According to the defendants' evidence, the discharge from the Bonneau culvert follows the natural drainage to the pond in the same manner that existed when the defendants owned the entire tract. And other than the fact that the grantors were required to contain the flow by installation of the culvert, the discharge of surface water to the land below remained the same.

■ More important, from the circumstances which existed at the time of the grant, it cannot be gathered that either of the parties to the deed intended to add a new benefit to the land conveyed or increase the burden on the land retained. Neither is it shown that such an easement was necessary to the full enjoyment of the land conveyed. These are essential requi-

sites to the creation of an easement by implication. *Chevalier* v. *Tyler,* 118 Vt. 448, 450, 111 A.2d 722; *Read, Administrator* v. *Webster, supra,* 95 Vt. at 244. ·

Although the fabric of the proof is lacking in these elements, the trial court, after properly denying the plaintiffs' motion for a directed verdict, submitted to the jury the question of whether the plaintiffs' land was in fact encumbered by the drainage of surface water resulting from the installation of the culvert. In so doing, the presiding judge instructed the jury, in substance, that if ·the water continued to run in the same drainage pattern this would not constitute an encumbrance unless additional water was discharged on the land below. He pointed out that it is not permissible to add to the natural flow. The plaintiffs objected to this aspect of the charge as not being the law of this case.

 We are inclined to agree, since a burden imposed in this manner would not constitute an easement and servitude in the true legal sense. Separate and apart from the contractual undertaking imposed in the deed, when the Bonneaus became proprietors of the upper terrain in the Hopkins property they acquired the right to have the surface water pass in its natural condition to the lower lands of their neighbor. *Miller* v. *Letzerich,* 121 Tex. 248, 85 A.L.R. 451, 456. By the same token, the owner of the lower land is obliged to accept the natural discharge of such water which naturally flows upon his land. The lower proprietor can collect the flow and carry it off by a proper outlet so as not to damage his property, provided he does not throw it back on the land above. *Winchester* v. *Byers,* 196 N.C. 383, 384, 145 S.E. 774; 2 Thompson, Real Property, *supra,* § 316, p. 20–21. See *Nicholson* v. *Doyle,* 125 Vt. 538, 540, 218 A.2d 689, and compare, *Capital Candy Company* v. *City of Montpelier,* 127 Vt. 357, 359, 249 A.2d 644.

 To be sure, the higher owner cannot artificially increase the natural quantity of water, or change its manner of flow by discharging it in the land below at a different place from its natural discharge. *Winchester* v. *Byers, supra,* 196 N.C. at 383, 145 S.E. 774. Such reciprocal rights and duties are not true easements and servitudes, although they bear some of their characteristics. *Scriver* v. *Smith,* 100 N.Y. 471, 3

N.E. 675, 677; 2 Thompson, Real Property, *supra,* § 316. See also annotation 59 A.L.R.2d *et seq.*

In any event, the error, in permitting the jury to decide whether there was an encumbrance, was harmless. The verdict of the jury on the instructions given, includes the determination that the culvert construction did not change the natural drainage pattern that existed prior to its installation. Moreover, the flow into the plaintiffs' pond was not received from the Bonneau property, but from the intervening land which the defendants retained at the time they conveyed to the plaintiffs in 1965. These considerations, and what we have stated above, in connection with the motion for a directed verdict, also precluded the court from granting the plaintiffs' request to charge that the right to drain surface water constitutes an encumbrance as a matter of law.

In the course of its deliberations, the jury returned to inquire of the court "whether it was legal, is there any restriction as to filling the pond." The court answered by saying this was not an issue for their consideration. The presiding judge then asked counsel to note any objections to the answer given in the supplementary instructions. Plaintiffs' attorney responded that they had nothing to say. The plaintiffs contend there was error in the supplementary instruction.

The point now sought to be raised on appeal was not presented to the trial court and is not before us. And objections to the instructions, as given, were waived by counsel's statement that he was content with the supplementary charge. *Rule* v. *Johnson,* 104 Vt. 486, 489, 162 A.2d 383; *Farnham & Sons* v. *Wark,* 99 Vt. 446, 451, 134 A.2d 603.

During the trial there was some evidence given concerning a second smaller pipe which apparently delivered water into the plaintiffs' pond from some source other than the Bonneau property. The trial court indicated it would charge this matter out of the case as an unrelated trespass. Counsel on both sides concurred. The plaintiffs complain that the jury was not specifically so instructed.

It is, of course, the court's duty to charge on every essential issue in the case, but it is not called upon to deal with evidence that is immaterial to the controlling issues. *Covell* v. *McCarthy,* 123 Vt. 472, 478, 194 A.2d 394. We find no preju-

dice against the plaintiffs in the court's failure to advise the jury that any question concerning the second drain had been ruled out of the case.

The same holds true of the appellants' remaining exception to the lower court's ruling in admitting into evidence the contract of sale, a declaration of the defendants' former attorney and evidence concerning damages. Without unnecessarily prolonging this opinion, it is enough to say that on the strength of the record presented on appeal, the points raised could not have influenced the verdict against the plaintiffs. Neither do these questions affect the disposition of this appeal.

*Judgment affirmed.*

EXTRACT FROM DEFENDANT'S EXHIBIT C