**Pine Haven North Shore Association, et al. v. Richard and Frances Nesti**

**Richard and Frances Nesti v. Pine Haven North Shore Association, et al.**

[416 A.2d 147]

No. 126-79

Present: Barney, C.J., Daley, Larrow, Billings, JJ., and Smith, J. (Ret.), Specially Assigned

Opinion Filed June 3, 1980

*William H. Quinn* and *Douglas C. Pierson* of *Pierson, Affolter & Wadhams*, Burlington, for Plaintiffs.

*Dinse, Allen & Erdmann*, Burlington, for Defendants.

**Larrow, J.** Two civil actions below were consolidated by agreement. They dealt with properties owned by the several parties on the shore of Lake Champlain in Shelburne and South Burlington, with chains of title running back to a common grantor, the Lozon family (Lozon). Taken together, the actions involved claims of trespass, dispute as to the location of and title to a right of way, and boundary locations. The individual parties are in each instance husband and wife, and for purposes of brevity will be referred to herein by surname only, since no question is made as to the persons in title to each piece of property. Pine Haven North Shore Association, also referred to as Pine Haven North Shore Park Association (Association), is an unincorporated association of the individ-

ual lot owners, holding title to an area deeded for park and recreational purposes in compliance with previous covenants so to do.

The first action in point of time was brought by the Association and lot owners Herge, Murray, Thompson, Huber, and Pecor against the defendants Nesti. The second action was brought by Nesti against the Association and lot owners Herge, Murray, Selby, and Thompson. The Selbys were never served with process and did not appear. Without reciting at length the extensive pleadings, frequently amended, three issues are presented by the instant appeals. They are: (1) the location of a twenty foot right of way conceded to lie easterly of the shore lots of the individual lot owners; (2) the northerly boundary of the Association property, also part of the southerly boundary of Nesti; and (3) the location of that part of the common boundary of Herge and Nesti running westerly from the top of the bank to the low water mark of Lake Champlain. These issues will be taken up in that order.

### Right of Way Location

A brief description of the properties involved is requisite to an understanding of this issue. All of the properties involved, in Shelburne and South Burlington, lie westerly of Route U.S. 7 (Shelburne Road) and the railroad right of way formerly the Rutland Railroad. Between the railroad and the individual lots lies the park land owned by the Association, bounded southerly by a public road known as Lozon Road or Pine Haven Drive. The individual lots, eight in number, abut on Lake Champlain, with the southerly lot (Pecor) being bounded southerly by the north line of Lozon Road extended. In northerly progression from Pecor are the lots of Huber, Reikelt (not a party), Thompson, Selby (not a party), Murray, Herge, and Nesti. The right of way in question runs along the easterly boundary of the first seven lots to the Nesti property, which extends from the lake to the railroad, northerly of Herge and the park land. The Nesti deed, last in point of time, was residual in nature in that it conveyed to them (Nesti) all the Lozon property west of the railroad not previously deeded.

In its findings and conclusions, the trial court ruled that a garage owned by Thompson was encroaching upon the right of way, and that Nesti owned the right of way. The location

of the right of way upon the ground was not found, beyond a determination that it lay "immediately easterly of the lots fronting on Lake Champlain." The size of the garage was not determined, nor the extent of its encroachment. Nevertheless, by mandatory injunction removal of the encroachment within ninety days was ordered, despite a request for further determination of the equities involved.

It is, in the first instance, quite clear that the mandatory injunction fails to comply with V.R.C.P. 65(d), requiring that it be specific in terms and describe in reasonable detail the acts sought to be restrained. As worded, compliance with it would be impossible to test. Reversal for such noncompliance would be required, were we to uphold the finding of encroachment. So, quite possibly, would remand be required for determination of the respective equities, under the general language set out in *Thompson* v. *Smith*, 119 Vt. 488, 509–10, 129 A.2d 638, 651–52 (1957). The paucity of facts found, however, with respect to the right of way location and extent of the encroachment, precludes determinative resolution of this issue.

These questions, however, do not determine the result. We are convinced that the general finding of encroachment is not supported by the record, and that the judgment order, insofar as it sets out a mandatory injunction, must be vacated *in toto*. Encroachment is not shown by the evidence at trial, fairly viewed.

We are pointed to a blackboard sketch drawn by Murray, one of the lot owners. Although it shows a rough positioning of Thompson's garage across a right of way line, it is plainly denominated as representing, not the fact, but the claim of Nesti. The only other possible basis for a finding of encroachment, and the one evidently relied upon by the court, is the testimony of a surveyor, Koerner, as to the location on the ground of a pipe evidently set by another surveyor, Hoag, in connection with a plan drawn and recorded several years before the conveyance of the Thompson lot to their predecessors in title. An easterly lot line boundary, passing through this pipe, would bisect the Thompson garage (of unfound dimensions) approximately in the middle. If such a line were in fact Thompson's easterly lot line there would be an encroachment as found.

But the pin and line in question cannot be so used, as a matter of law. The Hoag plan is not referred to in the deed to Thompson's predecessor, or anywhere in his chain of title. Neither is the pin. The pin is located 222.07 feet easterly of the top of the lake bank. But the Thompson chain of title describes both his north and south lines as running easterly from the top of the bank a distance of 250 feet. The southerly line is also the northerly line of Reikelt, and is described in his chain as 250 feet. Thompson's northerly line is also the southerly line of Selby, and is described in the Selby chain as 250 feet. All of these deeds precede, in time and recording, the residual conveyance to Nesti. The result is clearly governed by *Pareira* v. *Wehner,* 133 Vt. 74, 77, 330 A.2d 84, 86 (1974), wherein we held that an allusion to a prior survey, even if construed as a reference, would not control a metes and bounds description. The facts here furnish even less basis for making the Hoag survey in any way controlling, because the subsequent deeds do not even allude to it, in any manner. Whatever its original purpose, arguably the location of a water line, it never became the basis for the later deeds which here control. The east line of Thompson, therefore, is some 27.93 feet easterly of where the trial court assumed it to be, a discrepancy totally destructive of the finding of encroachment. So much of the judgment order as relates to encroachment by the Thompson garage, and its mandatory removal, must be stricken.

Incidental to the claim of encroachment by Thompson, and raised by Thompson's notice of appeal, is the fee ownership of the right of way in question. The trial court found ownership to be in Nesti, and the finding was seasonably challenged by the several lot owners and the Association, by motion to amend. But the issue of fee ownership, as distinct from location, has been neither briefed nor argued here, and is therefore waived. *In re Smith, Bell & Hauck Real Estate, Inc.,* 132 Vt. 295, 318 A.2d 183 (1974).

### Association-Nesti Boundary

As initially stated, the northerly line of the park land property owned by the Association and the easterly portion of Nesti's south line form a common boundary. Its location is here in dispute between these parties, and was determined by

the trial court to be a line 900 feet northerly of and parallel to the north side line of Pine Haven Drive, so-called.

Nesti urges that the line in question should be an extension of the Herge-Nesti common boundary in an easterly direction, from a line established by conceded markers on the top of the lake bank and the northeast corner of the Herge lot. A line so extended would hit the railroad right of way some 760 feet northerly of Pine Haven Drive, rather than 900 feet, and would not be parallel to Pine Haven Drive. It would make the parcel lie entirely in Shelburne, while the line set by the court would extend the parcel into South Burlington. The claimed line is argued for on the basis that the actual deed was recited to be in compliance with earlier deed covenants to convey referring to a parcel "approximately" 900 feet in length, that it referred to the parcel in Shelburne, without reference to South Burlington, and that it is indicated, at least roughly, by "artificial monuments" controlling in the absence of natural monuments. These "artificial monuments," as claimed, are the pipes in place for the Herge-Nesti line and the Shelburne-South Burlington line.

■ Several difficulties are inherent in the Nesti argument. Recognizing the importance of natural monuments and artificial monuments, in that order, such importance does not attach to monuments not referred to in the deed. Without such reference, features have no force as a monument in the true sense; they cannot serve to dispute courses and distances set out in the instrument of conveyance. *Haklits* v. *Oldenburg,* 124 Vt. 199, 203–04, 201 A.2d 690, 693 (1964).

■■ The "approximate" description in the preceding covenants cannot fare any better. The line description found by the court corresponds exactly to the description contained in the deed of conveyance. The recital in that deed that it is given to comply with previous covenants does not make, by using the word "approximate," those covenants controlling. When a deed contains a particular description and also a reference to a deed, the reference is regarded as a general description. "When the particular and the general description do not coincide, effect must be given to the particular description." *Pareira* v. *Wehner, supra,* 133 Vt. at 77, 330 A.2d at 86; *Basso* v. *Veysey,* 118 Vt. 399, 403, 110 A.2d 706, 708–09 (1954).

This is true, even conceding a discrepancy of some 140 feet to be within the term "approximate," a matter of serious doubt.

Moreover, in the face of a very specific deed dimension, the description of the property as located in Shelburne clearly must yield to the particular dimension. The 900 foot dimension in the deed is indeed clear and specific; the description is of a line "on the north . . . parallel to and 900 feet northerly of the south line of said parcel." That south line is described as the north line of Pine Haven Drive. These descriptions must prevail, as specific in contrast to general. *Basso* v. *Veysey, supra; Parrow* v. *Proulx,* 111 Vt. 274, 277, 15 A.2d 835, 836 (1940).

So much of the judgment below as relates to the northerly boundary of the Association's park land property is without error, and will be affirmed.

### West Portion of Herge-Nesti Boundary

Undisputed here is that portion of the Herge-Nesti boundary running from the top of the lake bank easterly to the northeast corner of Herge. That line is monumented, and agreed upon. The dispute centers around their common boundary westerly from the top of the bank to the low water mark of Lake Champlain. Without recital of specific compass courses, the Herge contention is that this line runs in a continuation of the north line above the bank, and the Nesti claim is that it runs from the westerly end of the north line above the bank to the low water mark at an interior angle of 90°. This leaves a triangular section of the beach in dispute. The trial court found in favor of the Nesti claim.

Again we are confronted with a situation where, we think correctly, the trial court held that a specific description controls a general one. In the original deed from Lozon to the Herge predecessors, beach rights were conveyed (as they had been to other lot owners under a common scheme) beginning at the Kirkness' north line (south line of Pecor) and running north "approximately nine hundred (900) feet to the north line . . . at or near the point where the south side of a large ravine presently intersects said shore." In a subsequent quitclaim deed from Lozon to Herge's predecessor, given as part of a series of deeds to relinquish the rights of other lot owners and to convey to each the fee to the beach in front (west) of

his lot, the quitclaimed beach was described as "lying west of the one hundred ten (110) foot westerly lot line conveyed . . . . Meaning the shore frontage beginning at the northwest and southwest corners of said lot running westerly each with an interior angle of ninety (90°) degrees to low water mark of Lake Champlain." This quitclaim was only about seven weeks later than the original conveyance.

The intent of the parties, garnered from these instruments, seems to clearly support the finding of the trial court. While Herge urges that the ravine is a natural monument, we are pointed to no evidence as to exactly where its south line intersects the shore. The exhibits show only the general course of the ravine, presumably its center line. And again, the first deed uses an approximate footage and a termination point indefinite in nature, *i.e.,* "at or near" the south side of the ravine. In contrast, the second deed, between the same parties and given and accepted by them, is clear and specific. The north boundary across the beach is to be at an interior angle of 90°, westerly of the west lot line, and beginning at the northwest corner. We dismiss as strained and untenable the Herge contention that the 90° interior angle is to be with the low water mark rather than the lot line. Completely apart from the fact that the course of the mean low water mark does not appear in evidence, it is purely conjectural whether a line at such an angle would ever reach the Herge property. We find no doubt or obscurity in the deeds, and no room for construction. *Bragg* v. *Newton,* 98 Vt. 102, 126 A. 494 (1924). The conclusions and judgment of the trial court, in this respect, are sustained.

Other portions of the judgment order below, dealing with the award of damages to Nesti, are not appealed from. Hence the judgment, amended to reflect the views herein expressed, will be affirmed.

*The May 1, 1978, judgment order of the Chittenden Superior Court is amended by striking paragraph 7 thereof, and as so amended is affirmed. Pine Haven North Shore Association, a/k/a Pine Haven North Shore Park Association, is to recover its costs in this Court from Richard and Frances Nesti; Warren and Cecile Thompson are to recover their costs in this Court from Richard and Frances Nesti; Richard and Frances Nesti are to recover one-half of their costs in this Court from Robert and Sally Herge.*