**Robert Swanson and Mary Swanson v. Bishop Farm, Inc.**

[443 A.2d 464]

No. 355-80

Present: Billings, Hill, Underwood and Peck, JJ., and Larrow, J. (Ret.), Specially Assigned

Opinion Filed February 2, 1982

*Parker, Lamb & Ankuda, P.C.,* Springfield, for Plaintiffs.

*Plante, Richards, Terino & Hanley,* Springfield, for Defendant.

**Billings, J.** Plaintiffs, Robert and Mary Swanson, sought an injunction and damages from the defendant for causing surface water in excess of the natural flow to be dispersed on plaintiffs' adjoining property. The trial court denied the plaintiffs' request for an injunction but awarded them $2,500 in damages. Plaintiffs appeal from that part of the judgment denying an injunction.

The plaintiffs own a home on Commonwealth Avenue in Springfield, Vermont. Behind the house there is a steep embankment which extends uphill to a plateau. A portion of the embankment and much of the plateau is owned by the defendant. In the side of the embankment is a natural ravine. The ravine starts near the top of the plateau on the defendant's property, descends the embankment, and terminates directly behind the plaintiffs' house, where it empties into a drainage ditch. The ditch runs across the back of the plaintiffs' lot and carries the run-off to the Black River nearby.

In 1956, as part of a development project, the defendant built a road which crosses the ravine. To permit drainage they installed a culvert under the road at the bottom of the ravine. In the late 1960's and early 1970's two houses were built on the plateau above the plaintiffs' property.

Since acquiring their home in 1964, the plaintiffs have experienced water problems during the month of April each year and during extraordinary rainfalls. On occasion water would appear in their cellar. Beginning in 1971, the plaintiffs noticed a substantial increase in the run-off coming down the ravine during heavy storms and in the spring. The plaintiffs claim that this additional run-off contributed to the flooding of their basement and the erosion of their backyard.

In 1977, the plaintiffs brought suit claiming that the defendant's development caused the increased flow. In addition to damages, they requested an injunction requiring the defendant to reduce the flow of water from the hillside to its natural level.

After a trial by court and a view of the property, the trial judge found that the defendant's development activity from 1965 to 1971 had resulted in a small increase in the flow of water onto the plaintiffs' property. For this increase, the court awarded the plaintiffs $2,500 in damages. An injunction was denied because the court felt an injunction would not

give the plaintiffs the relief requested. The plaintiffs appeal the denial of the injunction.

The law regarding the natural drainage of surface waters may be summarized briefly. Upper and lower property owners have reciprocal rights and duties as to surface water drainage. *Scanlan* v. *Hopkins,* 128 Vt. 626, 631, 270 A.2d 352, 356 (1970). The upper owner has the right to have the surface water pass to lower lands in its natural condition. *Id.* The lower owner must accept the natural flow of such waters upon his land. *Id.* As a general proposition, an upper property owner cannot artificially increase the natural flow of water to a lower property owner or change its manner of flow by discharging it onto the lower land at a different place from its natural discharge. *Id.* But, in cases involving only increased flowage and not a change in the place of discharge, an upper owner may increase the flow as long as it causes no injury to the lower property. *Kasuba* v. *Graves,* 109 Vt. 191, 207, 194 A. 455, 462 (1937). The burden is on the plaintiff to show that the defendant increased the natural flow and this increase resulted in injury to the plaintiff. *Nicholson* v. *Doyle,* 125 Vt. 538, 539–40, 218 A.2d 689, 690 (1966). "If this is established, the mere fact that flood conditions existed, or that the water was unusually high, will not protect the defendants." *Id.* at 540, 218 A.2d at 690. Of course the defendant will be liable only for that portion of the damage attributable to its increased flowage.

In cases where the damage is repetitive or continuous in nature, injunctive relief is entirely appropriate to protect the lower landowner. *S. L. Garand Co.* v. *Everlasting Memorial Works, Inc.,* 128 Vt. 359, 362, 264 A.2d 776, 778 (1970). In certain cases, however, an award of future damage might be appropriate in lieu of an injunction. A proper resort to equity does not always invoke the application of extraordinary or severe relief by way of a mandatory injunction. *Thompson* v. *Smith,* 119 Vt. 488, 509–10, 129 A.2d 638, 651–52 (1957). It is the duty of the court to consider and weigh the relative convenience or inconvenience, the relative injury sought to be cured as compared with the hardship of injunctive relief, and to consider whether injunctive relief can cure the problem. *Id.* Such consideration may dictate in-

stead substitution of future or anticipatory damages. *Id.* See *Pine Haven North Shore Association* v. *Nesti*, 138 Vt. 381, 384, 416 A.2d 147, 149 (1980); *Sykas* v. *Alvarez*, 126 Vt. 420, 421–22, 234 A.2d 343, 345 (1967).

The major problem with the lower court's decision in this case is that its findings of fact and conclusions of law lack clarity. "The purpose of findings is to make a clear statement to the parties, and to this Court if appeal is taken, of what was decided and how the decision was reached." *Wells* v. *Village of Orleans, Inc.*, 132 Vt. 216, 221, 315 A.2d 463, 466 (1974). It is not clear from the findings whether the damages sustained by the plaintiffs could be attributed to the increased flowage of the defendant. The court did find that there was an increased flow through the culvert but then concluded that stopping the flow would not solve the plaintiffs' water problem. It was also not clear whether the $2,500 awarded to the plaintiffs was for past damages, future damages, or both. The award of these damages was not appealed from, however, so the order granting them must stand.

Because the findings are unclear, we cannot determine if injunctive relief was properly denied. Therefore, the case must be remanded for a determination of whether the increased flow has caused any damage however negligible, and, if so, approximately what percentage of the flow is attributable to the defendant's development activity from 1965 to 1971. If the court finds that the increased flow will continue to cause damage, then the court should consider a mandatory injunction. In doing so, the court should weigh the relative hardships, and if it concludes an injunction is not advisable, it should award damages which take into account the continuing nature of the injury and the possibility of future injury to the plaintiffs' property. See *Pine Haven North Shore Association* v. *Nesti, supra,* 138 Vt. at 384, 416 A.2d at 149. In any case, the defendant is only responsible for the increased flow actually causing damage. *Kasuba* v. *Graves, supra.*

As a final matter we note that although this action clearly seeks equitable relief, it was heard below by the presiding judge and the assistant judges. This was error,

4 V.S.A. § 219, but no claim of error was predicated upon this ground, and the decision was a unanimous one so it is harmless here. *Travelers Insurance Co.* v. *Blanchard,* 139 Vt. 559, 559, 433 A.2d 296, 296 (1981). We reiterate that it is incumbent upon the trial court to make sure that it is properly constituted especially in cases seeking equitable relief. *Nugent* v. *Shambor,* 138 Vt. 194, 199, 413 A.2d 1210, 1213 (1980) (Billings, J., concurring).

*Affirmed as to damages, reversed and remanded for hearing on injunctive relief or other appropriate remedy.*