## Edward Fenwick, et al. v. City of Burlington, et al.

[708 A.2d 561]

No. 95-554

Present: **Gibson, Dooley, Morse and Johnson, JJ., and Cashman, D.J.,** Specially Assigned

Opinion Filed December 12, 1997

Motion for Reargument Denied January 26, 1998

*Douglas D. Le Brun* of *Dinse, Erdmann, Knapp & McAndrew, P.C.*, Burlington, for Plaintiffs-Appellees.

*Janet Murnane*, Burlington, for Defendant-Appellee City of Burlington.

*Robert S. DiPalma* of *Paul, Frank & Collins, Inc.*, Burlington, for Intervenor-Appellant.

**Dooley, J.** Intervenor-defendant George Procopio and plaintiff Edward Fenwick[1] appeal from the Chittenden Superior Court's decisions resolving a longstanding dispute over plaintiff's construction of a house in Burlington, on a lot adjacent to intervenor's home. Intervenor appeals from the superior court's decision to (1) award plaintiff occupancy, building, and zoning permits; (2) deny intervenor damages; (3) deny intervenor an injunction against plaintiff to remove the house; and (4) deny intervenor a writ of mandamus against the City of Burlington to remove the house. Both parties appeal from the court's award of attorney's fees to intervenor. We affirm the court's decisions to deny injunctive relief and mandamus. We reverse the decision to require the City of Burlington to issue permits and a certificate of occupancy, and the calculation of the attorney's fees. We remand for further proceedings.

To follow the facts in this case more easily, we have detailed them by relevant date:

1) October 13, 1988: Plaintiff's permit to build an additional house on a 1.40-acre lot, which contains his home, was denied by the Burlington Planning Commission. The Commission treated the application as a request for a planned residential development (PRD) and denied it because (a) a zoning amendment pending before the Burlington Board of Aldermen increased the lot size requirement for a PRD to two acres; and (b) the access right-of-way was only twelve feet wide, and the zoning ordinance required a twenty-five-foot right-of-way. Intervenor opposed the permit at the public hearing, thereby qualifying as an "interested person" under Vermont's zoning act.

2) December 12, 1988: Allegedly on the advice of the planning commission, plaintiff appealed to the Burlington Board of Aldermen, pursuant to 24 V.S.A. § 4443(c), for relief from the pending ordinance amendment increasing the minimum lot size for a PRD. The board refused to grant relief.

3) January 10, 1989: Plaintiff appealed to the superior court within thirty days of the denial of the board of alderman, but almost ninety days from the planning commission action. He filed the notice of appeal with the planning commission as

---

[1] Plaintiff Edward Fenwick represents joint owners Clarence Greenwood and Janet Greenwood in this appeal.

required by 24 V.S.A. §§ 4471, 4475, but neither he, nor the planning commission, sent a copy to intervenor. Intervenor was unaware of the appeal and did not enter an appearance.

4) May 21, 1990: The superior court granted plaintiff summary judgment on his planning commission appeal, without opposition from the City of Burlington, which had notice of the appeal. Based on the court order, the City gave plaintiff building and zoning permits on May 31.

5) August 1990: Intervenor discovered that plaintiff had been granted zoning and building permits when plaintiff moved heavy equipment onto his lot in order to begin construction. Intervenor petitioned the superior court for relief on August 14, arguing that he had been improperly denied notice of the appeal and that the summary judgment order was improper.

6) October 31, 1990: The superior court granted intervenor relief from the May judgment. Intervenor immediately requested that the City revoke the permits, but the City failed to act. By this time, plaintiff had dug the cellar hole and was building the new house.

7) November 1990: Intervenor first counterclaimed against plaintiff for an injunction to remove the house and prohibit use of any new construction, damages, and attorneys fees; and cross-claimed against the City for an injunction to revoke all permits nunc pro tunc, and an injunction to enforce the City's zoning and planning ordinances. Thereafter, intervenor moved to dismiss plaintiff's appeal as untimely.

8) March 6, 1991: The superior court dismissed plaintiff's appeal because it was not filed within thirty days of the planning commission decision. The order did not specify its effect on the permits. Plaintiff appealed to the Supreme Court.

9) May 1991: The City issued plaintiff a notice of zoning violation because he had constructed, and was using, the new house without a zoning permit. It also issued a stop work order. Plaintiff apparently continued work on the house despite the city notice and order. This action led to skirmishing through the Fall and Winter, with plaintiff relying on the stay caused by the notice of appeal to allow him to continue using the new house, and intervenor con-

tinuously demanding that the City take action against plaintiff.

10) April 2, 1992: In response to a motion by intervenor, the superior court ordered that plaintiff "cease and desist all further construction and improvement, use and occupancy of the premises that are the subject of this proceeding . . . unless and until expressly permitted to do so by an order of a court."

11) November 12, 1992: This Court decided *Fenwick v. City of Burlington*, No. 91-503 (Vt., Nov. 12, 1992) (mem.), holding that plaintiff's appeal from the planning commission to superior court was untimely and affirming the dismissal of the appeal.

12) April 8, 1993: The planning commission considered plaintiff's new application for zoning and building permits and denied it because the proposal did not meet the PRD two acre minimum-lot-size requirement, as specified in the current zoning ordinance. The commission rejected plaintiff's argument that he had a vested right to use the ordinance provision in effect in 1988, which had no minimum lot size.

13) May 4, 1993: Plaintiff appealed the planning commission's second denial to the superior court, and intervenor intervened.

14) July 27, 1993: Intervenor filed a motion to dismiss plaintiff's second appeal and for summary judgment on his counterclaim and cross-claim.

15) September 2, 1993: City also moved to dismiss the second zoning appeal, and for the first time sought an injunction to remove the house. In response, plaintiff amended his complaint to allege that the City had violated his civil rights by directing him to the board of aldermen and, as a result, denying him the ability to appeal the original denial of a PRD permit.

16) January 6, 1995: The superior court granted intervenor's motion to dismiss plaintiff's appeal from the second planning commission denial. The court, however, denied intervenor's request for injunction and mandamus, and set a hearing date to decide the amount of damages. The court did *not* address the City's request for an injunction, nor plaintiff's civil rights complaint.

17) May 11, 1995: The superior court found that intervenor had suffered no damages, but awarded attorney's fees from November 12, 1992 (the decision date of *Fenwick v. City of Burlington* in this Court).

18) June 1, 1995: The superior court ordered the City to grant plaintiff all building, zoning, and occupancy permits. Upon denying a motion to reconsider, the court stated that "Judge Katz had assumed that the house would be occupied. It was an oversight not to have dealt with this issue explicitly."

The three decisions that are the subject of this appeal are the January 1995 decision denying intervenor a mandatory injunction to force plaintiff to tear down the new house and a writ of mandamus against the City to force it to seek such relief; a May 1995 decision awarding attorney's fees;[2] and a June 1995 decision requiring the City to issue all permits. Before addressing the specific challenges to these orders, it is helpful to look at their rationale.

The January 1995 order was issued to resolve all outstanding issues between intervenor and plaintiff. This decision dismissed plaintiff's attempt to obtain a permit through appeal of the Burlington Planning Commission's second decision against him. The superior court ruled that the second permit request was substantially identical to the first one and, for that reason, could not be heard by the planning commission. Plaintiff has not appealed this decision.

The decision also addressed intervenor's request for a mandatory injunction against plaintiff and a writ of mandamus against the City. The court held that intervenor's arguments "fail to support a balancing of equities and relative injury which would justify removal of the structure," primarily because plaintiff acted pursuant to zoning and building permits that were not revoked until after the structure was erected. It held, however, that intervenor was entitled to damages if he could show a diminution in the value of his property as a result of plaintiff's construction.

As to the writ of mandamus, the court ruled that such relief was inappropriate when intervenor had other remedies at law which he did not use. The court held that intervenor should have appealed the inaction of the zoning administrator to the zoning board, and failing that action, could not obtain mandamus. Alternatively, the court ruled

---

[2]The May 1995 decision also determined that intervenor had suffered no economic injury and awarded no damages. Intervenor has not appealed this part of the decision.

that mandamus could not be used when plaintiff acted pursuant to a facially valid permit.

In the May decision, the superior court ruled that intervenor failed to show that he suffered any damage from plaintiff's construction. It ruled that intervenor was not entitled to attorney's fees for his original successful effort to have plaintiff's untimely appeal dismissed, but when plaintiff refused to abide by the decision of this Court affirming the denial, intervenor was entitled to attorney's fees for his subsequent enforcement actions.

In the June decision, the superior court ordered the City to grant plaintiff all necessary building, zoning and occupancy permits. The court issued the occupancy permit after recognizing that Judge Katz had not explicitly dealt with the occupancy issue in his earlier order, and had just assumed that the house would be occupied.

## I.

We begin with intervenor's claim that the court erred in failing to award him a mandatory injunction requiring plaintiff to tear down his new house. Intervenor's position is that plaintiff acted in bad faith, failing to give him notice and going forward with construction after it became clear that he no longer had valid building and zoning permits. Plaintiff responds that the denial of the injunction was within the court's discretion.

The standards for issuance of mandatory injunctions in zoning cases were first established in *Thompson v. Smith*, 119 Vt. 488, 129 A.2d 638 (1957), in which this Court emphasized that a mandatory injunction is "extraordinary and severe relief." *Id.* at 509, 129 A.2d at 651. We held that the court must "consider and weigh the relative convenience or inconvenience, the relative injury sought to be cured as compared with the hardship of injunctive relief," and also consider "an award of damages in lieu of injunction." *Id.* at 509, 129 A.2d at 651-52. Later cases have reiterated the use of a balancing approach. See *Richardson v. City of Rutland*, 164 Vt. 422, 426, 671 A.2d 1245, 1248 (1995); *Swanson v. Bishop Farm, Inc.*, 140 Vt. 606, 610, 443 A.2d 464, 466 (1982), *overruled on other grounds* in *Soucy v. Soucy Motors, Inc.*, 143 Vt. 615, 619, 471 A.2d 224, 226 (1983); *Town of Bennington v. Hanson-Walbridge Funeral Home, Inc.*, 139 Vt. 288, 295-96, 427 A.2d 365, 370 (1981).

In considering whether to grant a mandatory injunction, the court's inquiry necessarily involves a consideration of all relevant equities. See *Town of Shapleigh v. Shikles*, 427 A.2d 460, 464-65 (Me. 1981) (in

considering mandatory injunction for removal of building in violation of zoning ordinance, court must consider "basic principles of justice and equity" and apply the "conscience of the chancellor"); see generally H. McClintock, Handbook of the Principles of Equity § 144 (2d ed. 1948) (court must balance all the equities, including the relative hardships to the parties, their conduct in relation to the transaction, the nature of the interests affected, and the relative proportion of interests lost by the course of action taken). Because of the breadth of the inquiry, the trial court must be accorded wide discretion, reviewable here only for abuse. See *Richardson*, 164 Vt. at 427, 671 A.2d at 1249 (courts have wide range of discretion in framing equitable decrees).

■ We believe that the decision not to award intervenor a mandatory injunction was within the trial court's discretion. On the one hand, plaintiff built the house when his right to do so was being challenged, and in that sense, took the risk that he would not ultimately prevail. See *Bird v. Delaware Muncie Metropolitan Plan Comm'n*, 416 N.E.2d 482, 490 (Ind. Ct. App. 1981) (where defendant continued work after revocation of permit and defied stop-work order, severe remedy of ordering removal of illegal structures is justified). On the other hand, plaintiff apparently constructed the exterior of the building when he had building and zoning permits that authorized this construction.[3] See *Hargreaves v. Skrbina*, 662 P.2d 1078, 1080 (Colo. 1983) (defendant acted in good faith despite continuing construction after he became aware of setback violation because he relied upon building permit). Although intervenor sent a stream of letters to city officials, he never sought revocation of the permits until he filed such a request in superior court in February 1992. Intervenor failed to receive proper notice of the zoning appeal, but it is not clear that plaintiff was responsible for the failure to provide notice. See V.R.C.P. 74(b) (1971) (in version of rule in effect when plaintiff appealed to superior court, appellant must file notice of appeal with clerk of administrative body who is responsible for notifying interested parties).

---

[3] This case was decided on a motion for summary judgment filed by intervenor. The only "facts" are contained in affidavits submitted by plaintiff and intervenor. Plaintiff's affidavit, dated August 31, 1993 and attached to the response to the summary judgment motion, states that he relied on the building permit and stopped work when presented with a stop-work order by the City. It also states that he uses the structure for storage of his automobile. Intervenor's affidavit, dated July 23, 1995 and submitted with the motion for summary judgment, states that plaintiff uses the structure to park his car and that on July 2, 1993 intervenor saw plaintiff work on the outside of the structure.

Also important to the balancing of the equities were the relative hardships caused by either the status quo or an order to remove the building. Neither party quantified these impacts, but the record is sufficient to provide some sense of them. Plaintiff built the house about twenty-five feet from the site of intervenor's backyard pool. The building reduced intervenor's privacy in using the pool, but had no adverse impact on the value of his property. Although we do not know the cost of tearing down plaintiff's building, we can assume it would be substantial. We can also assume that the value of plaintiff's property with the second house would be greater than without it.

■ Intervenor argues that because plaintiff provided no evidence of the hardship of tearing down the house, the court could not consider it. Intervenor was seeking the extraordinary and severe remedy of a mandatory injunction and bore the burden of making the record to support it. We think that the lack of economic evidence of impacts stands against intervenor, not in his favor.

Relying primarily on *In re Fairchild*, 159 Vt. 125, 616 A.2d 228 (1992), intervenor next argues that the court erred in not granting him a writ of mandamus against the City. In his cross-claim, intervenor requested an order[4] requiring the City to revoke all permits nunc pro tunc and "to enforce the regulatory and enforcement provisions of its planning and zoning ordinances." In the summary judgment motion, intervenor's request was for an order requiring the City to seek the removal of plaintiff's structure "either through its regulatory process or through this proceeding."

In *Fairchild*, we summarized the requirements for a writ of mandamus:

(1) the petitioner must have a clear and certain right to the action sought by the request for a writ; (2) the writ must be for the enforcement of ministerial duties, but not for review of the performance of official acts that involve the exercise of the official's judgment or discretion; and (3) there must be no other adequate remedy at law.

*Id.* at 130, 616 A.2d at 231. The plaintiff in *Fairchild* owned land adjoining a building that was being used in violation of the zoning

---

[4] In the cross-claim and motion for summary judgment, intervenor asked for the relief of an injunction against the City. The court characterized the request as one for mandamus, and intervenor has used this characterization here.

ordinance. We found that the plaintiff was entitled to mandamus against the town zoning administrator, who refused to take any action to stop the violation. We reasoned that the neighbor had a clear right to enforcement of the zoning ordinance, the zoning administrator's duty to enforce the zoning ordinance was ministerial, and the plaintiff had no other adequate remedy at law.

The *Fairchild* holding was distinguished in *Richardson v. City of Rutland*, 164 Vt. at 425, 671 A.2d at 1247, a case in which "the zoning administrator was dilatory [but] he did act" on a complaint that a restaurant had improperly built part of its parking lot in a residential zone. We held that mandamus was appropriate when the zoning administrator refused to act, but not where the administrator does act because "the nature of the remedy sought is discretionary." *Id.* at 425, 671 A.2d at 1248. In the latter case, the zoning administrator had not failed to discharge a ministerial duty.

This case is governed by *Richardson*. The City's obligation was unclear as long as the first zoning appeal was pending in this Court because it had been ordered to provide permits to plaintiff. Nevertheless, it issued a stop-work order to prevent further construction and never issued a certificate of occupancy. Further, it sought a removal order in this proceeding. The City did not fail to discharge a ministerial duty.

## II.

Next, intervenor and the City argue that the superior court erred in directing that the City issue all permits to plaintiff to allow him to occupy and use his new structure. They claim that the issuance of the permits was inconsistent with the earlier decisions dismissing plaintiff's appeals from the planning commission denials of the permit requests. Plaintiff responds that the issuance of the permits was a necessary consequence of the decision to deny intervenor an injunction. This was the rationale on which the superior court made its ruling.

We have a fundamental difficulty with the decision to require issuance of the permits. At the time of the January 1995 decision, there were two requests for injunctive relief pending. The first had been made by intervenor and was explicitly addressed in the court's decision. We have affirmed that decision above.

The second request had been made by the City of Burlington on September 2, 1993. There is no indication that the court acted on this

request in its January 1995 order. In fact, the scope of this order was unclear, and plaintiff sought clarification of its effect on the civil rights claims against the City asserted in his amended complaint. The court responded that the decision was not a final determination in either zoning appeal case: "It attempts to resolve issues raised by motion, but not resolve every issue in either case."

■ Normally, the fact a decision did not reflect that more than one party sought the same relief would be inconsequential. In this case, however, the entitlement of the parties to that relief was different. Although intervenor was required to show that the balance of equities favored the issuance of a mandatory injunction to remove the structure, and failed to make this showing, the City could obtain relief without this showing. See *Town of Sherburne v. Carpenter*, 155 Vt. 126, 131, 582 A.2d 145, 148 (1990). If the zoning violation is substantial and involves conscious wrongdoing, the City is entitled to an injunction, including a mandatory injunction to remove an offending structure, as a matter of course. See *id.* at 131-32, 582 A.2d at 148-49. The court's decision did not address this standard.

The City's burden is not the only difference. Plaintiff responded to the City's request for relief by amending his complaint to assert that the City had violated his civil rights by misdirecting him to the board of aldermen so that he forfeited his appeal right and by refusing to recognize his vested right to rely on the PRD rules prior to the amendment to require a two-acre minimum lot size. He had made clear in earlier filings that he believed that the City was estopped from seeking any relief. None of these issues was addressed in the January 1995 decision.

We recognize that the City was responsible, in large part, for the failure of the court to address its claim for relief. The City buried its request for relief in a response to intervenor's motion for summary judgment without clearly identifying that it was independently seeking injunctive relief. Rather than pointing out that the court had failed to address the claim for relief, the City actually opposed plaintiff's motion for clarification of the January 1995 decision and further obfuscated the situation. Nevertheless, because of the public interest in enforcement of the zoning law, and the interrelationship of the City's action with intervenor's request for a writ of mandamus against it, we must hold that the City's request for a mandatory injunction remains unresolved.

■ Since the City has a pending request for a mandatory injunction, which the superior court has not yet resolved, it was

premature to order the City to issue permits to plaintiff to allow him to occupy and use the disputed structure. We cannot agree with the court's decision that the issuance of the permits was a necessary consequence of the denial of relief to intervenor.

## III.

Finally, we address the issue of attorney's fees. The superior court awarded intervenor attorney's fees incurred after this Court's 1992 decision on plaintiff's appeal. The court reasoned that intervenor's litigation expenses were unreasonably increased as a result of plaintiff's refusal to accept that decision such that an award of attorney's fees was justified.

Plaintiff challenges the ruling, arguing that the facts demonstrate that he was always entitled to a zoning permit and was denied the permit only because of the arbitrary decisions of the City and its action in causing him to lose his appeal rights. Thus, he argues that he should not have to pay intervenor's attorney's fees when it was clear that intervenor should never have prevailed. Intervenor argues, on the other hand, that fees should have been awarded for legal services from the point that he first had to intervene into the superior court appeal to protect his interests.

The parties agree that the determinative precedent is *In re Gadhue*, 149 Vt. 322, 544 A.2d 1151 (1987), a case very similar to that before us. In *Gadhue*, the petitioner, a neighbor, appealed the grant of a variance to a landowner who proposed to build a commercial structure. This Court found that the variance had been granted improperly and reversed the variance. During the time that the appeal was pending in this Court, however, the landowner built the structure in issue. "Consequently, [petitioner], having successfully vindicated both a private and public right, was compelled to reenter the Chittenden Superior Court to seek a mandatory injunction in order to give meaning to this Court's decision." *Id.* at 324, 544 A.2d at 1152. While the action was pending, the Town amended its zoning ordinance to allow the structure, mooting the injunction action, but leaving the petitioner's request for attorney's fees.

We held that under equity principles petitioner could collect her attorney's fees because she "was drawn into litigation beyond the point that should have been the natural culmination of her appeal" as a result of landowner's action in building the structure. *Id.* at 329, 544 A.2d at 1155. We awarded attorney's fees for legal services rendered after the initial decision in this Court holding that the landowner did not have a right to a variance to build the structure.

If anything, the case for attorney's fees here is stronger than that in *Gadhue*. In that case, the landowner had prevailed at the zoning board and superior court levels and built in reliance on those decisions. Here, plaintiff lost in the planning commission, obtained a building permit only because intervenor was not notified of the action, went ahead with construction even though he knew his building permit was suspect, and lost at every level thereafter. Intervenor was thrown into unnecessary enforcement action. The fact that plaintiff might have prevailed had he taken a timely appeal to superior court is irrelevant to the necessity and reasonableness of intervenor's actions.

*Gadhue* calls for a functional analysis of the legal services involved in the request for fee reimbursement. To the extent that the legal services are aimed at enforcement of the decision to deny zoning approval, their cost is recoverable. To the extent the services are aimed at a favorable ruling on the right to a permit, their cost is not recoverable. In *Gadhue*, the line was relatively easy to draw because there was a clear point in time when petitioner's actions switched from opposing the landowner's zoning permit to enforcing the denial decision made by this Court.

In this case, there is no clear temporal line. We agree with the superior court that intervenor cannot recover the cost of legal services incurred to reopen the initial superior court appeal, to have that appeal dismissed and to defend the dismissal in this Court. On the other hand, costs incurred in attempting to stop plaintiff from building the house while the case was going forward and in preparing the counterclaim for relief are recoverable even if they occurred before our appeal decision. Intervenor can also recover for all fees expended after our appeal decision, as the superior court held.

*The orders denying intervenor George Procopio an injunction and a writ of mandamus are affirmed. The order requiring the City of Burlington to issue building and zoning permits, and a certificate of occupancy to plaintiff is reversed. The order limiting intervenor to recovery of attorney's fees only for legal services rendered after November 12, 1992, the date of this Court's decision in Fenwick v. City of Burlington, No. 91-503, is reversed. The matter is remanded for proceedings not inconsistent with this opinion.*