Lussier v. Armstrong, No. S0981-01 CnC (Katz, J., Mar. 11, 2004)


[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]


STATE OF VERMONT                    SUPERIOR COURT
Chittenden County, ss.:             Docket No. S0981-01 CnC

FRANCIS LUSSIER

v.

MICHAEL ARMSTRONG

v.

ESSEX REALTY CORPORATION


ENTRY

This is a riparian rights case of trespass and nuisance involving surface water passing through a chain of upper and lower landowners that resulted in the flooding of middle landowner, Armstrong. Essex Realty and Kinney Drugs separately seek summary judgment in their favor from third-party plaintiff Armstrong. Armstrong alleges that the two upper

landowners contributed to the flooding that began in 1998 and continued into 2001, which caused damage to his basement. Capital Lincoln-Mercury, while the original plaintiff, appears to have no claims against either Essex or Kinney and has acknowledged but not participated in these motions.

Armstrong's property is an apartment house on Pearl Street in Essex Junction, Vermont. To the rear of the Armstrong property is a drainage swale, a moist, marshy strip of land that while narrow runs the length of Armstrong's property, parallel to Pearl Street and the adjacent raised line of the New England Railroad. This swale is a natural drainage area for upland properties including the immediately adjacent Kinney Drugs and Essex Realty's shopping mall on the other side of Kinney. From Armstrong's property, the swale goes into the lower property of Capital Lincoln-Mercury. In 1998, Armstrong and Capital Lincoln-Mercury started to experience flooding on their property which continued for at least the next three years. These floods occurred during storm events or melts when there was a large, but not unusual, amount of water coming into the swale. Capital Lincoln-Mercury initially brought suit against Armstrong claiming that his improvements caused the flooding and led to trespass and nuisance damages. Armstrong counter-claimed alleging that Capital Lincoln-Mercury's improvements to its property prior to 1998 effectively blocked the swale, forcing water back onto Armstrong's property and flooding his basement. Armstrong also joined Kinney Drug and Essex Realty as contributors to the flood damage since both had paved their property thereby adding more water to the drainage swale, which in turn made the flooding worse.

The key question posed by Kinney Drug's motion for summary judgment is whether its improvements have altered the natural flow of

water onto Armstrong's property. As upper and lower property owners, Kinney and Armstrong have a reciprocal duty to each other. Kinney must not alter the place or manner where surface water flows. Armstrong, in return, must accept this surface water. Scanlan v. Hopkins, 128 Vt. 626, 631 (1970). Armstrong's claim is that Kinney's construction has altered the flow of water off of Kinney's property by making it more impermeable. (Armstrong Opp'n to Summ. J. at 3). Specifically, Armstrong has noted in his affidavit that he has witnessed water overflowing during large storms from catch basins that Kinney installed. (Armstrong Aff. at ¶ 5). But, Armstrong fails to provide evidence of whether or not this overflow exceeded previous runoff from the Kinney Drug property that already flowed into the swale prior to construction. Swanson v. Bishop Farm, 140 Vt. 606, 610 (1982) ("[D]efendant will be liable only for that portion of the damage attributable to its increased flowage."). As even the case Armstrong cites, Nicholson v. Doyle, 125 Vt. 538 (1966), points out, the issue is not the change wrought by Kinney but its effect. To that end, Armstrong's personal observation of water running off is no evidence that its volume is any greater. Armstrong's sole support for this conclusion is an accompanying affidavit by Paul Duchesneau, a professional engineer retained by Armstrong, who states the general proposition that paving makes an area more impermeable and can increase the runoff. (Duchesneau Aff. at ¶¶ 2, 3). From this Armstrong argues that the water coming over the catch basin was additional runoff from Kinney's paving that would have otherwise percolated into the soil. (Armstrong Opp'n to Summ. J. at 3). Such a conclusion is not warranted. Armstrong never demonstrates how much area Kinney paved during its construction. His only support is his own affidavit, which states "[Kinney's lot] became more impervious as a result of the Kinney Drugs development." (Armstrong Aff. at ¶ 6). From maps submitted by Essex Realty, the area in question was already paved over prior to Kinney's construction as late as 1988. (Essex

Realty Mot. for Summ. J. at Ex. B).

Armstrong's reply that Kinney's awareness of pre-existing drainage problems in the swale make its building culpable for the flooding begs the question. Contrary to Armstrong's argument, Kinney had no duty to tie into the municipal storm water system simply because it knew that there were flooding problems. It only had a duty not to increase the water flow to Armstrong's property in a manner that would injure Armstrong. Swanson, 140 Vt. at 610. To offset whatever additional paving it did, Kinney installed a series of catch basins around its property to keep water out of the swale and improve drainage in the area. (Kinney Mot. for Summ. J. at Ex. B). This plan was approved by the Essex Junction Village Planning Commission and was properly installed. Id. Armstrong offers no evidence that any further paved areas were not offset by the four catch basins Kinney installed or that the basins have not functioned to lower the amount of surface water run-off. While Kinney's compliance with the Essex Junction Village Planning Commission is not per se proof of a reduction in surface water run-off, Armstrong provides no evidence to suggest that Kinney's changes have failed to meet its expectations and reduce the total amount of surface water. Moreover, Kinney's affidavits do not contradict that Armstrong observed water pouring over the catch basin during larger rains and snow melt or that paving can incrementally increase surface water run-off, but neither do Armstrong's affidavits dispute the material fact asserted by Kinney that its alterations did not increase the amount of surface water already running off during these events. Creaser v. Bixby, 138 Vt. 582, 584–85 (1980) (affirming summary judgment for defendant when his affidavits established a material fact and did not contradict plaintiff's affidavits). There simply is no evidence for a jury to reasonably consider and link Kinney to an increase in flooding. Any such attempt would be mere speculation and assumption by the jury, which does

not satisfy Armstrong's burden of proof for trespass and nuisance as a matter of law.

Essex Realty's motion for summary judgment is based on the fact that it has not made any changes affecting the surface water run-off from its property since 1971. In its motion, Essex Realty argues that its shopping center was essentially completed in 1971 and has not increased the flow of water since then. (O'Leary Aff. at ¶ 3). Essex does admit that there was further expansion to its parking lot in 1988, creating additional impervious area. (Essex Realty Resp. to Opp'n to Summ. J. at 2). This paving in 1971 and 1988 has, according to Armstrong, increased the flow of surface water into the drainage swale worsening the flooding which began in 1998. (Duchesneau Aff. at ¶¶ 5, 6, 7, 9). Armstrong specifically cites to Essex Realty's paving of eight acres, its two drainage pipes leading from the shopping center, and its snow removal practice which piles the snow from the parking lot against the back of the property by the swale. Id. Accordingly, Armstrong claims trespass and nuisance against Essex Realty for the additional water entering the swale through these practices or alterations. As Armstrong points out, the majority of the water entering its swale comes from Essex Realty. Id. at ¶ 6. So that regardless of downstream alterations, Essex Realty has increased the water flowing into Armstrong's property and burdened Armstrong with a greater amount of water. (Armstrong Opp'n to Summ. J. at 4.) The issue is whether this increase in water has led proximately to the damage claimed by Armstrong. Kasuba v. Graves, 109 Vt. 191, 207 (1937) (holding that defendant had no right to pump additional water from a quarry into a stream to the extent that it damaged plaintiff's property). This is an issue of fact, which cannot be determined on summary judgment since both parties have submitted affidavits that support contrary positions. It will be the role of the fact finder to determine which is more credible.

Essex Realty's motion also relies in part on the civil rule of reciprocal water rights as enunciated in Swanson which states that a defendant is only liable for the damage from increased flowage. 140 Vt. at 610. There is no doubt the civil rule of surface water has dominated Vermont decisions. See, e.g., Pion v. Bean, 2003 Vt. 79, ¶ 25; Swanson, 128 Vt. at 631. The holding in Swanson, however, does not reflect the important distinction concerning property has been altered beyond its natural conditions to affect drainage. Cases such as Swanson and Pion are based on modifications of natural conditions that nevertheless remain close to their original drainage pattern. In Swanson, for example, the damages claimed by the lower landowner came from an increase in water from upland developments but not through a shift in drainage patterns. Swanson, 140 Vt. at 609. By paving its property and plowing its snow to one spot, Essex Realty has not just modified the amount of water draining off but altered how the property drains. This situation moves away from the straightforward civil rule under Swanson and closer to the facts and holding of Canton v.Graniteville Fire District No. 4. 171 Vt. 551 (2000) (mem.). In Canton, the lower property owner's damages came from flooding caused by defendant's creation of a quarry which not only increased the flow of water but completely altered the natural drainage of the upper lands. Id. at 552. Like the Essex situation, the flooding in Canton did not occur for several decades after defendants last modified the land. In fact, the Graniteville Fire District had not modified the quarry since 1958 but the flooding did not start until 1994. Id. at 551. Under such circumstances the Vermont Supreme Court upheld the findings of the lower court and found that the reciprocal duty of the upper landowner had been violated making them liable for the damages caused. Id. at 552. As such, we find Canton to hold a high degree of relevance to Essex Realty's liability for altering its watershed and contributing increased amounts of water to the swale.

Finally, there is an issue that neither party appears to have fully briefed, which would require the claim against Essex to proceed to trial. Since Essex has not, according to its affidavits, modified its property in any substantial way since 1971, there is evidence of a possible prescriptive easement between Essex, Armstrong, and lower property owners in the swale to accept the increased flow of water that resulted from Essex's improvements since there is no evidence that the rate of water has changed since 1971.  Cf. Canton, 171 Vt. at 551 (noting that there were decades between defendant's alterations and any change in the water flow).[1]  As an earlier case dealing with this issue suggests, "And equity will not refuse relief where there has been an unwarranted invasion of a person's property, likely to be continuous in character, and such as, continued under a claim of right, might ripen into an easement."  Kasuba v. Graves, 109 Vt. 191, 199–200 (1937).  Since neither party has briefed or directly addressed this issue, there is not enough evidence to make such a determination at this time. Furthermore, prescriptive easements are primarily issues of fact for the fact-finder and thereby often not a proper subject for summary judgment.  See Community Feed Store v. Northeastern Culvert Co., 151 Vt. 152, 155–58 (1989) (discussing the elements of prescriptive easements and emphasizing their proof through evidence of use).  This is not to suggest that there is evidence by either party sufficient to persuade on this issue, only that there is evidence that supports this claim which in turn makes Armstrong's claim

---

[1] By treating major alterations as torts of trespass and nuisance, Canton suggests the limits of a prescriptive easement and property analysis.  171 Vt. at 552.  Given the evidence, however, that Essex has not changed the nature or amount of its water discharge since 1971, there is a potential issue about the applicable statute of limitations not raised in Canton.

against Essex less amenable to summary judgment.

For the foregoing reasons.  Kinney Drugs' motion for summary judgment is granted in full; third party plaintiff's claims against it must be dismissed.  Essex Realty's motion for summary judgment is denied.

Dated at Burlington, Vermont_____, 2004.


_____
Judge