## McGee Construction Company v. Neshobe Development, Inc.

[594 A.2d 415]

No. 89-551

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed May 24, 1991

*John J. Kennelly* of *Carroll, George & Pratt*, Rutland, for Plaintiff-Cross-Appellant.

*Timothy L. Taylor, William H. Meub* and *Katherine P. Mosenthal* of *Keyser, Crowley & Meub, P.C.*, Rutland, for Defendant-Appellant.

**Allen, C.J.** This action arises out of a contract dispute between Hugh McGee Construction Co. (McGee) and Neshobe Development, Inc. (Neshobe). Neshobe appeals from a jury verdict finding it to be the breaching party and awarding McGee damages in the amount of $20,000. McGee cross-appeals from the trial court's denial of its V.R.C.P. 65.1 motion for enforcement of a separate judgment on stipulation against the security provided by Neshobe. On Neshobe's appeal we affirm Neshobe's liability and reverse and remand on damages. On McGee's cross-appeal we reverse.

In 1987, Neshobe undertook a condominium development project in Brandon, Vermont. The project was to proceed in three phases. McGee was hired to do the excavation, trenching, roadwork, and other sitework on Phase I on a cost-plus basis. The work on Phase I was completed in the summer of 1987. A balance of $15,000 remained outstanding on the Phase I contract after its completion.

On August 30, 1988, McGee and Neshobe entered into a contract for Phase II of the project, under which McGee was to do work similar to that performed on Phase I. Phase II was split into part 1 and part 2, each consisting of six units. The work on part 1 was to commence on September 1, 1988, and be substantially completed by October 1, 1988. Work on part 2 would begin when sales of the units dictated, and be completed within four weeks. The Phase II contract between McGee and Neshobe was for a fixed sum of $76,000, $38,000 being allocated to each part.

McGee began its work on part 1, consisting of a duplex and a quad, on or about September 1. Soon thereafter it ran into unscheduled delays occasioned by Birch Hill Construction Co. (Birch Hill), the contractor responsible for the concrete work on Phase II. Birch Hill delayed work while waiting for the delivery of some additional concrete forms that it had ordered. There was also trouble with the setting of some footings, and one of the walls set by Birch Hill had to be torn down because it was defective. McGee was not able to backfill the duplex until October 3, and at that point it had not yet been able to begin its work on the quad's walls because Birch Hill was still working on the footings. While it was a subject of dispute at trial, McGee testified through its principal, Hugh McGee, that it had been unable to do much of the roadwork, utility trenching, and other sitework because of the disruption in its schedule caused by the concrete delays.

On or about October 7, Hugh McGee went to the office of Rick Kaminski, president of Birch Hill and vice president of Neshobe, to express his concerns about the delay. Kaminski told him that a meeting with the principals of Neshobe would be scheduled for the 10th, and that if McGee had requests, to make them specific. The substance of the October 10 meeting is captured in the minutes of the meeting prepared by Neshobe, which both parties agree are accurate.

At 7:25 am H. McGee enters the meeting and was asked by R. Kaminski to state his case and his reasons for calling the meeting in his own words. He states, he had stated that he cannot operate under the existing contract and will no longer proceed under the terms and conditions of that contract. R. Kaminski from Neshobe indicated that he is bound legally and morally by that contract and a new contract will not be allowed. Although, Change Orders will be allowed in reference to time extensions. H. McGee insisted that he will not continue under the terms of that contract and R. Kaminski stated, if he will not honor the terms and conditions of the contract (suggested) that H. McGee remove his equipment from the site and (suggested) that perhaps we will be better off having another contractor finish the project. H. McGee indicated that was acceptable to him and that would be exactly what he would do, remove his equipment from the site.

Neshobe sent a letter to McGee later in the day, containing these minutes and notifying McGee that if it was not on site on October 17, the contract would be terminated. A second letter to the same effect was sent on the 12th. McGee was not on site on October 17, and Neshobe hired a replacement. McGee received no payments under the Phase II contract.

McGee subsequently brought suit, alleging breach of the Phase II contract by delays attributable to Neshobe. McGee also sought recovery of the balance owed it on the Phase I contract. Neshobe counterclaimed, alleging that McGee's failure to be on site on October 17 and its failure to abide by the contractual provisions for resolution of the dispute made McGee the party in material breach of the contract. During trial by jury, the parties entered into a stipulation in favor of McGee on the Phase I contract claim in the amount of $16,669.71. At the close of trial the jury found against Neshobe on its counterclaim, and returned a verdict in favor of McGee in the amount of $20,000. The court entered judgment on the jury verdict and judgment on the stipulation separately.

Following entry of judgment on the stipulation, McGee moved under V.R.C.P. 65.1 to enforce that judgment against an irrevocable letter of credit that Neshobe had used to provide security. The court denied the motion, holding that judgment on

the stipulation had not yet become final because of Neshobe's pending post-trial motions in opposition to the judgment on the jury verdict.

Neshobe has appealed from the judgment on the jury verdict, and McGee has cross-appealed from the denial of its Rule 65.1 motion. We will address these appeals in turn.

I.

Neshobe contends that, by the terms of the contract, it was McGee's cessation of work, not delays attributable to Neshobe, that materially breached the contract. Neshobe admits that it was responsible for many of the delays which interfered with McGee's ability to perform the contract in a timely fashion. Neshobe also concedes in its brief that "[h]ad the contract not addressed delay, McGee could present a tenable argument that the delays occasioned by Neshobe were a substantial breach of contract, thereby justifying . . . a termination of the contract." Neshobe points, however, to provisions within the contract specifically addressing owner delay and resolution of claims arising from such delay, and argues that McGee's failure to comply with these provisions left McGee in material breach of the contract.

■■ It is axiomatic that parties can define their contractual relationship by the provisions employed in their contract. Contracting parties can define what will constitute a material breach of their contract. See *Carter v. Sherburne Corp.*, 132 Vt. 88, 92, 315 A.2d 870, 873–74 (1974) (inclusion of "time is of the essence" clause magnifies the significance of delay); see also *Burgess Construction Co. v. M. Morrin & Son Co.*, 526 F.2d 108, 114 (10th Cir. 1975) ("unreasonable delay is a breach of an implied obligation not to hinder or delay the other party's performance, in the absence of a contract clause contemplating and excusing the delay"), *cert. denied*, 429 U.S. 866 (1976). They can determine the damages that are recoverable in the event of a breach. See *Simpson Development Co. v. Herrmann*, 155 Vt. 332, 334–36, 583 A.2d 90, 91–93 (1990) (construing contract's limitation-of-remedies provision); see also *M. A. Lombard & Son Co. v. Public Bld'g Comm'n of Chicago*, 101 Ill. App. 3d 514, 519, 428 N.E.2d 889, 892 (1981) ("if the contract expressly provides for delay or if the right of recovery is expressly limited or

precluded, then these provisions will control"). Contracting parties can also provide for the dispute resolution procedure to be followed in case of breach. See *R. E. Bean Construction Co. v. Middlebury Assocs.*, 139 Vt. 200, 202, 428 A.2d 306, 308 (1980) (contract provided for arbitration of disputes).

The contract between McGee and Neshobe expressly addressed McGee's remedies for owner delay. Paragraph 8.3 of the "General Conditions of the Contract for Construction," incorporated by reference into the contract signed by the parties, reads:

> 8.3.1. If the Contractor is delayed at any time in progress of the work by act or neglect of the Owner . . . or of a separate Contractor employed by the Owner . . . then the Contract Time shall be extended by Change order for such reasonable time as the Architect may determine.
> 8.3.2. Claims relating to time shall be made in accordance with the applicable provisions of Paragraph 4.3.
> 8.3.3. This Paragraph 8.3 does not preclude recovery of damages for delay by either party under other provisions of the Contract Documents.

The avenue for recovery of delay damages under "other provisions of the Contract Documents" was the bringing of a claim for additional cost in accordance with the procedure set forth in ¶ 4.3, entitled "Claims and Disputes." Claims were to be in writing, and were to be referred initially to the architect. The contract clearly provided within this section for continuing contract performance. Paragraph 4.3.4 reads: "Pending final resolution of a Claim including arbitration, unless otherwise agreed in writing the Contractor shall proceed diligently with performance of the Contract and the Owner shall continue to make payments in accordance with the Contract Documents."

Neshobe contends that McGee "walked off the job" without resorting to this contractual claims procedure. We agree that if this were the undisputed evidence, McGee would be the party in material breach. The above contractual provisions represent a bargained-for procedure to be followed when grounds for a claim exist. The intent is that the claims be resolved while the parties continue to perform under the contract, and that the mere existence of a claim not constitute sufficient grounds for walking off the job. In construing similar contractual provi-

sions, the court in *Vermont Marble Co. v. Baltimore Contractors, Inc.*, 520 F. Supp. 922, 928 (D.D.C. 1981), reasoned:

> These [contract] clauses were designed to provide and define the rights and obligations of the subcontractor and the contractor in the event of delays. The meaning of these clauses would be grossly warped and their effectiveness diluted if [subcontractor] were to have, in addition to the rights therein provided, the alternative but unmentioned right to walk away from the project without obligation.

See also *Granite Computer Leasing Corp. v. Travelers Indem. Co.*, 894 F.2d 547, 552 (2d Cir. 1990) (subcontractor "bound under the disputes clause of the prime contract to submit its claim to [the prime contractor] and to continue working even if the subcontract had been breached by the government's delays in design approval").

■■ We do not agree, however, that the record adequately supports Neshobe's contention on appeal that McGee walked off the job without complying with the contractual claims procedure. In determining an appeal from a jury verdict, we must look at the evidence in the light most favorable to the verdict winner, excluding the effect of modifying evidence, and we will sustain the verdict if there is any evidence fairly and reasonably tending to support it. *Lowe v. Beaty*, 145 Vt. 215, 216, 485 A.2d 1255, 1256 (1984); *Claude G. Dern Electric, Inc. v. Bernstein*, 144 Vt. 423, 426, 479 A.2d 136, 138 (1984). Here the contractual claims procedure did not specify which party bore the obligation of referring a claim to the architect. The contract in this regard provided only that "Claims . . . shall be referred initially to the Architect." Neshobe on this appeal cannot successfully attribute the failure to engage in the claims procedure to McGee where it is unclear which party was responsible for the failure. It is evident from the minutes of the October 10th meeting between McGee and Neshobe that Neshobe's response to McGee's statement that he could not operate under the existing contract was not that any claims McGee had be referred to the architect. Rather, the minutes record that a vice president of Neshobe stated that if McGee "will not honor the terms and conditions of the contract (suggested) that H. McGee remove his equipment from the site and (suggested) that perhaps we

will be better off having another contractor finish the project." The minutes then read: "H. McGee indicated that was acceptable to him and that would be exactly what he would do." Taking this evidence in the light most favorable to McGee, Neshobe cannot assert that the failure to engage in the claims procedure was wholly attributable to McGee.

Neshobe would contend that the question of who bore the obligation to refer a claim to the architect was never reached because a condition precedent to this obligation was that the claim be in writing. As stated above, Neshobe's response to McGee's demands on October 10th was not that McGee put it in writing. Rather, it was "suggested" that he leave the site. Neither of the termination notices sent by Neshobe to McGee make reference to the necessity of submitting a written claim. We are not convinced, on this evidence, that the verdict of the jury should be overturned.

## II.

■■ Neshobe's next contention is that McGee failed to introduce evidence necessary to the jury's proper calculation of damages. We agree. The correct measure of the recovery which McGee pursued at trial, as stated in Restatement (Second) of Contracts § 347 (1981), is

> (a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus
> (b) any other loss, including incidental or consequential loss, caused by the breach, less
> (c) any cost or other loss that he has avoided by not having to perform.

As applied to this case, the damages would be calculated by subtracting from the contract price, § 347(a), McGee's cost of completion and other costs avoided, § 347(c). To this recovery would be added the damages McGee incurred as a result of the delay, § 347(b). See *VanVelsor v. Dzewaltowski*, 136 Vt. 103, 105, 385 A.2d 1102, 1104 (1978) ("Where the owner breaches the contract by demanding that the work shall stop, the contractor is entitled to recover the contract price less his cost to perform the remainder of the contract."); 5 A. Corbin, Corbin on Con-

tracts § 1094 (1964); 11 S. Williston, A Treatise on the Law of Contracts § 1363 (W. Jaeger 3d ed. 1968).[1]

 McGee failed to introduce the evidence necessary to calculate its cost of completion. It is undisputed that at the time of Neshobe's wrongful termination, McGee still had some of part 1, and all of part 2, of the Phase II contract left to complete. Yet McGee's showing on its cost of completion consisted solely of the number of days it would take to complete part 2 times its costs-per-day. It did not introduce evidence on how many days of work remained on part 1 as of the date of termination.[2] The cost of completing the work that remained to be done on part 1 was a part of McGee's total cost of completion. Without any evidence on it, the jury did not have the evidence necessary to ascertain McGee's total cost of completion. McGee attempts to avoid this defect by reminding the Court that it is not our role to "second-guess the jury." See *Retrovest Assocs. v. Bryant*, 153

---

[1] An equivalent measure of damages would be McGee's expenditures it had incurred in performance of the contract, as distinct from damages incurred as a result of Neshobe's delay, plus the profit on the contract. Then added to this would be the damages incurred as a result of the delay. See 5 A. Corbin, *supra*, § 1094, at 511–12; 11 S. Williston, *supra*, § 1363, at 343. McGee did not present its case in conformance with this measure, and did not present evidence on the full amount of expenditures it had incurred in performance of the contract.

[2] McGee contends that the following testimony of Hugh McGee was directed toward the number of days it would take to complete the remainder of part 1:

Q: Mr. McGee, how much additional work was involved in Part 1 of Phase II in terms of days as opposed to the Part 2 work?

A: I'd say that's probably 10 days.

Even after taking this evidence in the light most favorable to McGee, *Lowe v. Beaty*, 145 Vt. at 216, 485 A.2d at 1256, the context makes clear that this testimony demonstrated only that the contract was front-loaded, and said nothing about the number of days remaining on part 1 as of the date of termination. Following the above statement, Hugh McGee testified to the additional work that part 1 contained over the work in part 2, and testified that part 2 would take only 20 days to complete, as opposed to the 30 days provided for in the contract. Throughout the proceedings below, McGee expressly presented its cost of completion as the 20 days to complete part 2 times its costs-per-day.

Further, we cannot find that the gap in McGee's evidence was filled by the testimony of Markowski, the contractor engaged by Neshobe to replace McGee. Markowski's testimony contains no discussion of the number of days it needed for completion.

Vt. 493, 497, 573 A.2d 281, 283 (1990). Yet the presence of a jury does not work to cure defects in a party's proof.

The reasoning behind McGee's failure to introduce evidence on the cost to complete the remainder of part 1 is perhaps best demonstrated by a hypothetical. A contractor is engaged on a thirty-day construction project. After doing five days of work, it is forced to sit idle at the site for twenty-five days because of owner delay. It then properly terminates the contract and sues for recovery. If recovery were simply the contract price minus the cost of completion, the contractor would receive nothing for the twenty-five days in which it was incurring expenses yet was not furthering completion of the project. The cost of completion remains as large on the thirtieth day as it was on the fifth day. To redress this inequity, the contractor presents its cost of completion as zero. It reasons that it was not able to avoid any cost of completion because it was incurring expenses at the site up through the day the contract was to be completed, and therefore it did not have to subtract any cost of completion from the contract price.

The reasoning employed by our hypothetical contractor and by McGee equates the cost of completion with the damages incurred because of delay, without a showing that they are indeed equivalent. This approach is erroneous. As stated above, the proper measure of recovery is the contract price minus the cost of completion and other costs avoided. Added to this are damages incurred because of owner delay. As applied to the hypothetical, this would be the contract price minus the twenty-five-day cost of completion, plus the damages incurred because of the twenty-five-day delay.

■ We do not hold, however, that McGee's erroneous approach to damages warrants entry of judgment in Neshobe's favor. Our case law has not previously addressed the proper presentation of a claim for damages where owner delay constitutes a material breach of contract, resulting in termination. This Court has previously stated, in general terms, that a builder's recovery under a terminated contract is the contract price minus cost of completion. *VanVelsor*, 136 Vt. at 105, 385 A.2d at 1104. But *VanVelsor* did not answer how McGee was to account for the damages incurred because of owner delay. Hav-

ing answered that question only today, we decline to enter judgment in Neshobe's favor, and choose rather to remand for a new trial on damages. See *Vines v. Orchard Hills, Inc.*, 181 Conn. 501, 514, 435 A.2d 1022, 1029 (1980) (because the law surrounding plaintiffs' claims has "not previously been clearly spelled out in our cases, it is appropriate to afford to the [plaintiffs] herein another opportunity to proffer evidence to substantiate their claim"); see also *B.B. & J. v. Bedell*, 156 Vt. 203, 206–07, 591 A.2d 50, 52 (1991) (where liability established, remand on issue of damages may be appropriate to prevent a miscarriage of justice).

### III.

■ Having affirmed Neshobe's liability, there is no longer a possibility that it will be entitled to a set-off against the judgment on the stipulation in favor of McGee. Accordingly, there is no just reason for delaying McGee's enforcement of the judgment on the stipulation against the security provided by Neshobe. See V.R.C.P. 54(b). For this reason, the trial court's denial of McGee's V.R.C.P. 65.1 motion is reversed.

*Affirmed as to Neshobe's liability and reversed and remanded as to damages. The denial of McGee's Rule 65.1 motion is reversed.*