### Karen Q. CANTON v. GRANITEVILLE FIRE DISTRICT NO. 4

[762 A.2d 808]

No. 99-429

August 22, 2000. Defendant Graniteville Fire District No. 4 appeals from a jury verdict holding it liable for changing the natural flow of surface water onto plaintiff Karen Canton's property and causing damage in the amount of $27,000. On appeal, defendant claims there was insufficient evidence for the jury to conclude that defendant had changed the natural flow of water. Defendant also appeals the award of prejudgment interest, arguing that the jury as finder of fact in this case, not the judge, was the correct body for determining whether an award of interest was due. We affirm.

Taken in the light most favorable to plaintiff, the following are the facts adduced at trial. See *McGee Constr. Co. v. Neshobe Dev., Inc.*, 156 Vt. 550, 556, 594 A.2d 415, 418 (1991) (jury verdict sustainable if, looking at evidence in light most favorable to verdict winner and excluding effect of modifying evidence, there is any evidence fairly and reasonably tending to support it). Plaintiff began renting the property she now owns in 1979. She purchased the property from her landlords in 1982. When she moved into the house, in 1979, there was a sump pump in the basement. Through the years, water would seep in, but only in small quantities, and it would be removed by the sump pump. Then, in December of 1994, plaintiff began to experience flooding in her backyard and eighteen to twenty inches of water in her basement.

Defendant fire district owns and operates a public water system in Graniteville consisting of a series of old granite quarries, including Barclay and Standard Quarries, which are used as water reservoirs, and which are located on a hill behind plaintiff's house. Defendant began using Standard Quarry in approximately 1958, and purchased it from Rock of Ages granite company in 1962. Defendant operated the Standard Quarry without change in the mode of operation from the time it began, in 1958, until after the start of this litigation.

Before the quarries existed, precipitation landing on the hill where the quarries are located would flow down the hill as surface water. The digging of the quarries altered the watershed. At the present time, instead of running down the hillside, the surface water and water from a number of springs flows into and collects in the quarries. Excess water from the Barclay Quarry flows into the Standard Quarry, and any overflow from Standard Quarry is discharged through a culvert, into a grout pile located above and approximately 500 feet from the land owned by plaintiff. Plaintiff's water problem was caused by the overflow from Standard Quarry, flowing through the grout pile, and eventually flowing into plaintiff's backyard.

At the end of the trial, three issues were submitted to the jury: (1) whether defendant changed the natural flow of water from defendant's land to plaintiff's land; (2) whether any such changes proximately caused damage to plaintiff's land; and (3) if so, how much. The jury found that defendant changed the natural flow of water from defendant's land to plaintiff's land by redirecting it, and that the change in flow of water caused damage to plaintiff in the amount of $22,000 in loss of value of her property and $5,000 in annoyance or discomfort. The trial court

added costs of $85 and prejudgment interest of $5,500. This appeal followed.

Defendant first argues that there was insufficient evidence to support the jury's finding that it changed the natural flow of water. Defendant argues the evidence at trial showed a predecessor in interest created the quarries and changed the natural flow of the surface water, and therefore defendant should not be held liable.

An upper property owner is entitled to have surface water pass to lower lands in its natural condition. See *Swanson v. Bishop Farm, Inc.*, 140 Vt. 606, 610, 443 A.2d 464, 465 (1982) (overruled on other grounds by *Soucy v. Soucy Motors, Inc.*, 143 Vt. 615, 471 A.2d 224 (1983)). However, an upper property owner cannot artificially change the manner of flow by discharging it onto the lower land at a different place from its natural discharge. See *id.* at 610, 443 A.2d at 466. Such interference with the flow of surface water is a form of conduct that may result in a trespass or nuisance. See Restatement (Second) of Torts § 821D cmt. e (1979) (flooding of plaintiff's land is trespass, and, if it is repeated or of long duration, it is also a nuisance); S. Kinyon & R. McClure, *Interferences with Surface Waters*, 24 Minn. L. Rev. 891, 936 (1940) (arguing that rules relative to surface waters be classified under tort law as trespass or nuisance, rather than property law).

Liability for trespass arises when one intentionally enters or causes a thing to enter the land of another. See Restatement (Second) of Torts § 158(a) (1965). Thus, one who causes water to enter the land of another is liable for trespass. See *S. L. Garand Co. v. Everlasting Memorial Works, Inc.*, 128 Vt. 359, 360-62, 264 A.2d 776, 777-78 (1970) (treating diversion of water onto another's land as act of trespass). Because defendant repeatedly causes water to enter plaintiff's land, it is liable for continuing trespass. See *id.* at 362, 264 A.2d at 778 (trespass is continuing if repeated acts are done or threatened).

Even assuming water flow is an indirect invasion of property, and therefore not a trespass, interference with surface water may constitute a nuisance. See Restatement (Second) of Torts § 833. An upper property owner creates a nuisance when he or she causes water to flow onto lower lands in a manner or place different from its natural state, harming the lower property owner's interest in the use and enjoyment of that land. See *id.* § 821D. Thus, every time surface water collects in Standard Quarry and is discharged onto plaintiff's land through the grout pile, defendant is invading plaintiff's interest in the use and enjoyment of her property and creating a nuisance.

Regardless whether we treat the diversion of surface water as a trespass or nuisance, it was not error for the jury to find defendant liable for plaintiff's damages. *McGee Constr.*, 156 Vt. at 556, 594 A.2d at 418 (jury verdict sustainable if there is any evidence fairly and reasonably tending to support it). The fact that the culvert and granite pile was created by defendant's predecessor is irrelevant. The tort is committed when defendant releases water through the culvert, which is not the natural flow of the surface water.

Defendant claims that the spring water that flows into and collects in the quarries is not surface water. However, this argument was raised for the first time in its reply brief, and will not be considered on appeal. See *State v. Plante*, 164 Vt. 350, 355, 668 A.2d 674, 677 (1995) (issues raised for first time on appeal will not be addressed). Furthermore, even if we were to hold that spring water is not surface water, the fact still remains that defendant redirected the rest of the surface water flowing down the hillside, through its quarries, onto plaintiff's property. Therefore, defendant is liable to plaintiff

whether or not spring water is included in the definition of surface water.

Defendant also argues that there was no evidence explaining why plaintiff suddenly experienced a water problem after fifteen years, even though defendant had operated its water system in the same manner over the period in question. In other words, defendant argues it could not be the cause of plaintiff's water problem. However, plaintiff must not prove defendant's actions were the sole cause of her water problem; it is sufficient that she prove it is one of the causes. See *Nicholson v. Doyle*, 125 Vt. 538, 539-40, 218 A.2d 689, 690 (1966) (plaintiffs must show actions of defendants caused or formed part of cause of cellar flooding). Plaintiff's expert testified that the water flowing out of Standard Quarry raised the water table, caused dampness in plaintiff's basement, and flooded her backyard. The jury's finding that defendant caused plaintiff's damages was supported. See *Retrovest Assocs. v. Bryant*, 153 Vt. 493, 497, 573 A.2d 281, 283 (1990) (court will affirm jury verdict unless clearly erroneous).

Defendant next argues that the jury as finder of fact in this case, not the judge, was the correct body for determining whether an award of interest was due. V.R.C.P. 54 (amount of judgment shall include all interest accrued on amount of monetary relief due up to and including date of entry). Here, the judge instructed the jury to disregard interest, explaining to them that he would address that issue. Defendant did not object to that jury instruction, nor did defendant object when the court made its verbal award of interest. Because this issue was not preserved for appeal, we do not address it. See V.R.C.P. 51(b) (no error in giving instructions to jury unless party objects distinctly prior to jury consideration of issue); *State v. Sanders*, 168 Vt. 60, 63, 716 A.2d 11, 14 (1998) (issues not objected to at trial are waived for purposes of

appellate review); *Carmichael v. Adirondack Bottled Gas Corp.*, 161 Vt. 200, 211, 635 A.2d 1211, 1218 (1993) (because objection was not made to jury instruction, alleged error was waived).

*Affirmed.*