Vermont Superior Court
Filed 12/08/23
Caledonia Unit

VERMONT SUPERIOR COURT
Caledonia Unit
1126 Main Street Suite 1
St. Johnsbury VT 05819
802-748-6600
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 21-CV-02983

---

**Katherine Aldridge v. Brightlook Condominium Owners Association, Inc., et al**

---

## ENTRY REGARDING MOTION

Title:       Motion for Summary Judgment; Motion for Discovery ; Sufficiency (Motion: 16; 17)
Filer:       Andrew C. Boxer; Katherine Aldridge
Filed Date:  August 23, 2023; September 21, 2023

The motion is GRANTED IN PART and DENIED IN PART.

This is a water trespass case. Plaintiff Katherine Aldridge claims that changes made by Defendants Brightlook, LLC and Laurence K. Rossi have caused a change to how water flows down the hill from the Brightlook Apartments onto her property and into her house. She claims that following work done by Rossi in 2018, the water coming off the hill has changed in direction and degree. She also claims that the repairs made by Rossi constitute an on-going trespass as a portion of the sewer lines are now located on her property. Defendants have filed a motion for summary judgment seeking to dismiss several of Aldridge's claims against them. Aldridge, in turn, has filed a motion for "An Examination and Determination for the Sufficiency of Defendant Brightlook, LLC, and Laurence K. Rossi's Responses to Plaintiff's Request for Admissions." For the reasons detailed below, the Court grants Defendants' Motion in regards to the claims of fraud, Intentional Infliction of Emotional Distress, and Punitive Damages. The Court denies the remainder of Defendants' Motion. The Court also denies Aldridge's Motion for an Examination and Determination of Sufficiency.

*Motion for Examination and Determination of Sufficiency*

As a preliminary matter, the Court will address Aldridge's Motion requesting the Court to review and evaluate the sufficiency of Defendants' answers to Plaintiff's Requests to Admit in accord with the provisions of V.R.C.P. 36. This provision of Rule 36 functions as a motion to compel, and it is subject to the same requirement to confer as other motions to compel under Rule

26(h). See 8B Wright & Miller, Fed. Prac. & Proc. Civil § 2263 (3d ed. 2023 update) (noting that federal courts, on which the Vermont rule is based have required parties to confer). That means the Court will not address the substance of a motion to compel until after the parties confer and try to resolve or narrow the issue in good faith.

This need to confer is particularly important in the present matter for three reasons.

First, the purpose of a request to admit is to measure the opposing party's agreement to the truth of any matters within the scope of discovery "that relate to statements or opinions of fact or of the application of law to fact, including the genuineness of any documents described in the request." V.R.C.P. 36(a). Several of Aldridge's requests to admit go beyond this scope and received proper objections from the Defendants. For example, in Exhibit O Aldridge sought to confirm in Request to Admit 41, 42, and 43 whether Brightlook, LLC would be calling specific witnesses. This is not a proper subject for a request to admit, and at this stage, the identity of which witnesses each side intends to call remains their own trial strategy and attorney work product. The purpose of discovery is to provide each side with the opportunity to identify the universe of potential witnesses, assess the substance of their potential testimony, and get a sense of their credibility. Until trial is scheduled, however, neither side is required, outside of expert witness disclosures to commit to which fact witnesses they intend to call. As such, Brightlook, LLC's objection was appropriate.

A similar issue arises in Exhibit N. In that document, Aldridge sought to learn at Request to Admit 15 whether or not the Gilman Housing Trust, Inc. had or had not retained the services of an engineer. The decision whether to retain an expert is normally within the purview of attorney work product, and such experts are only disclosed in accord with the rules of discovery and the parties' discovery schedule. Moreover, Rule 26 (b)(5)(D) protects parties from having to disclose to the other side whether they have retained initial experts or not. If an expert is not disclosed as an expert for trial, their work and opinions are normally outside of discovery, absent a showing of exceptional circumstances.

Second, the main objection raised in Aldridge's motion concerns Brightlook, LLC's broad objection to several request to admit using the term "incident." Brightlook, LLC's answer states that the term is too broadly defined to allow it to provide a meaningful answer. Aldridge's response is to contend that the definition is not too broad and to point out that the Gilman Housing Trust did not file the same objection to similar uses of the word. Despite a four page motion with several multi-

page exhibits, however, neither party quotes or cites to Aldridge's definition of the term "incident." It is, therefore, impossible for the Court to evaluate whether this term was narrowly drawn or broadly drawn. It is also impossible for the Court to determine if the objections were reasonable or an unreasonable parsing of terms. As the questions are framed, Brightlook, LLC's objections appear to be reasonable and narrowly drawn. Where possible, it appears, such as Request to Admit 7 in Exhibit O that Brightlook, LLC provided a substantive answer while also asserting the objection to vagueness.

Third, the Court questions the relevancy and importance of some of Aldridge's questions. While Rule 36 allows parties to inquire broadly, some of the requests to admit appear to be focused on specific factual issues that may not be relevant. For example, Aldridge has several requests to admit concerning what Brightlook, LLC communicated or did not communicate to the Gilman Housing Trust, which purchased the apartment building after the September 2018 sewer line work that Aldridge contends caused the damage to her house. While the Court can envision relevant material in the substance of these conversations, Aldridge's request are focused on whether Brightlook, LLC had conversations with specific Gilman Housing Trust employees or whether Brightlook's employees were retained by Gilman. The Rules of discovery have a proportionality provision that limits excessive discovery. V.R.C.P. 26(b)(1). At first review, the Court cannot conclude that all of the issues raised in the Requests to Admit serve a material role in the furtherance of this case.

For these reasons, the Court **denies** Aldridge's motion for Sufficiency.

*Defendants' Motion for Summary Judgment*

*A.* *Standard of Review*

Vermont Rule of Civil Procedure 56 governs motions for summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to as a matter of law." V.R.C.P. 56(a). See *Gross v. Turner*, 2018 VT 80, ¶ 8, 208 Vt. 112; *Gilman v. Maine Mut. Fire Ins. Co.*, 2003 VT 55, ¶ 7, 175 Vt. 554. The purpose of summary judgment is to "smoke out" parties' supporting facts. *Donnelly v. Guion*, 467 F.2d 290, 293 (2d Cir. 1972). The moving party must support its assertion with numbered paragraphs with references to materials in the record. V.R.C.P. 56(c)(1). The nonmoving party must show that the material facts are in dispute. *Boyd v. State*, 2022 VT 12, 275 A.3d 155. The

nonmoving party does this through introducing their own admissible evidence. *Gross*, 2018 VT at ¶ 8. Additionally, the court gives the nonmoving party the benefit of reasonable doubts and inferences. Brousseau v. Brousseau, 2007 VT 77, 182 Vt. 533. If the court determines there are no genuine issues of material fact, the court will grant summary judgment. V.R.C.P. 56.

Defendant Brightlook, LLC and Laurence Rossi have filed a motion for partial summary judgment. In their motion, they seek the outright dismissal of Aldridge's claims for fraud, intentional infliction of emotional distress, and punitive damages. Defendants also seek partial summary judgment on the issue of causation for the water trespass claims underlying Aldridge's claims for nuisance and trespass. In support of their motion and in compliance with V.R.C.P. 56(c), Defendants have submitted a statement of undisputed material facts, and Aldridge has properly submitted objections to this statement as required under the rule. Notwithstanding this dispute, several facts appear to be relatively clear.

### B.    *Background*

Katherine Aldridge has owned and lived in a house and property located at 15 Spring Street in St. Johnsbury, Vermont for the past 23 years. The portion of Spring Street where Aldridge lives runs along the base of a hill. At the top of the hill sits the Brightlook Apartment Building. Defendant Rossi and Brightlook, LLC purchased this apartment building in 2017. At the time, the building's sewer system and the property's storm drains had long been installed. The sewer lines extending from the Brightlook apartment building run toward Spring Street where they connect with municipal sewer lines under the street. To reach the bottom of the hill, the lines appear to cross under at least one and possibly two neighboring properties.

In September 2018, Defendants became aware of a rupture in the sewer lines that was causing raw sewage and effluent to surface onto at least one of the neighboring properties. Rossi, as the then-owner and manager of Brightlook, LLC sought to repair this line. While there is some dispute as to when the rupture began, it appears fairly undisputed that Rossi, and his contractors, performed the work on or about September 20, 2018. This work was successful in ending the surfacing sewage problem. It is also undisputed that Rossi and his contractors dug into the earth at various points during this repair, and the undisputed evidence demonstrates that this digging was to access the existing sewer line and/or to install the new segments of sewer line. This digging occurred on the hillside below the Brightlook apartments and above 15 Spring Street. Following

this work, Rossi and his contractors put dirt over the areas excavated, re-graded the areas, and put grass seed down.

While Rossi made some efforts to communicate with Aldridge at the time the work commenced, he did not reach her and began work without her express permission. Whether such permission was needed is a disputed point.[1] After work began, Rossi did make contact with Aldridge. During their exchange, Aldridge states that Rossi promised to have his attorney get into contact with her. Aldridge states that she backdown from objecting to any on-going work based on this promise. No such contact was made.

Rossi contends that employees from St. Johnsbury's Department of Public Works provided some limited guidance and supervision to him on the work he was doing. Aldridge has provided credible evidence that the municipal employees' role was more limited and informal. The affidavit of the St. Johnsbury town manager, Chad Whitehead indicates that there demonstrates that DPW did not treat this as a formal project, and there are no records of employees logging time at the site. This raises a material, but limited question as to how closely the municipality supervised or provided any opinion on the work being performed.[2]

Aldridge also makes the point that Defendants never sought approval or permits for the repair work, but it is not clear that such approvals were necessary. The repair work was done to a sewer line that ran across private property. Rossi represents that his work consisted solely of repair and replacement work. While Aldridge disputes this representation in her motion, she does not produce any evidence that would show that this representation by Rossi is inaccurate. This extends to one of the fundamental questions in this case, which is how the repairs were performed. Aldridge's theory is that Rossi disconnected the storm drains from the sewer system and that this disconnection left water coming off the hill with no place to go other than the basement of 15 Spring Street.[3] The problem with Aldridge's theory is that much of her evidence does not establish

---

[1] This issue lies beyond the scope of the present motion as Defendants have not sought summary judgment on the issue of physical trespass either by Rossi and his agents to do the work or by any claims to an on-going trespass by relocating the sewer line onto Aldridge's property. As such, the Court will not address these issues in this decision.

[2] As a repair to sewer lines on private property, DPW would have had a limited role as such repairs are normally the obligations of the property owner to perform.

[3] In the alternative, Aldridge appears to propound a more general theory of res ipsa loquitur by noting that water runs downhill and that any water in her basement constitutes an increase in the flow of water to portions of her property that did not previously experience such flows. The Court address this theory in its legal analysis below.

what she seeks to prove. In Aldridge's response to Defendants' Statement of Undisputed Material Facts #18, she cites to four pieces of proof to support the contention that prior to 2018 the storm and sewer lines were connected. First, she cites to Chad Whitehead's affidavit to assert that the Town had historically blown out the sewer line through the storm drain. That is not what Whitehead's affidavit states. It states only that the Town had historically blown out the sewer line, but it makes no reference to the storm sewer drain or catch basin. Second, she cites Rossi's deposition testimony for a purported admission that the storm drain was not disconnected from the sewer line. Rossi's deposition does not make such admission. Third, Aldridge also points to the sewer line map on file with St. Johnsbury, which was drawn and filed by one of Rossi's predecessors in title. Aldridge characterizes this drawing as showing the storm sewer connected to sewer line. The drawing is less than clear and does not identify any storm lines or catch basins. There is one figure that might be a catch basin, but it is unclear if the figure indicates a part of the system, an adjacent catch basin, or a cover to the line that could be cleaned out. Fourth, Aldridge submits the affidavit of Fay Ellis, her neighbor who does provide credible, circumstantial evidence that the storm catch basin was linked to sewer line.

After the conclusion of Rossi's work, Aldridge claims that water began to flow into her property in ways that it had not previously done so prior to Rossi's work. Aldridge claims that this infiltration of water has caused damage to her home, the loss of personal property, and has led to mold and other moisture issues which have forced her from the house. Defendants, for purpose of the present motion, do not dispute these damages as asserted.

C.      *Legal Analysis*

        i.      *Proximate Cause in Negligence and Trespass Claims Associated with Water Trespass*

Defendants seek summary judgment on the portion of Aldridge's claims for negligence and trespass based on water trespass and infiltration. Defendants base their motion on what they characterize as a lack of evidence for the element of proximate cause that both the negligence and trespass claims require Plaintiff to establish. This, in turn, is based on Aldridge's lack of an expert witness to explain how Defendants have altered the water flow. Aldridge's reply is that it is self-evident water flows down a hill, and such a self-evident truism does not require an expert to explain. This position misperceives the nature of a water trespass and the responsibility of an upper landowner.

Under Vermont law, water flowing from one property to another is not, in and of itself, a trespass. *Canton v. Graniteville Fire Dist. No. 4*, 171 Vt. 551, 552 (2000) (mem.). It is only when an upper property owner "causes water to flow onto lower lands in a manner or place difference from its natural state" that a trespass arises (or negligence for causes such a change). Id. Therefore, simply stating that water flows downhill is not sufficient. The doctrine of res ipsa loquitur ("the thing speaks for itself") is a doctrine that applies in certain cases where causation is not important because, regardless of what the causes is maybe, defendant will still be liable. *Marsigli v. C.W. Averill Co.*, 123 Vt. 234, 236 (1962) (laying out the test for applying the doctrine of res ipsa loquitur). Water trespass is not one of those types of cases because the general principle that water flows from an upper to lower property is a truism backed by the science, but liability only attaches if an upper property owner alters the flow in such a manner that causes the water to flow differently, and that new flow causes damage or injury, either in part or whole. *Canton*, 171 Vt. at 553..

In the present case and taking the facts in a light most favorable to Aldridge, the evidence shows that prior to 2018 the Brightlook apartment building sat higher than 15 Spring Street and a sewer line ran downhill. A stormwater catch basin also sat in the parking lot above 15 Spring Street adjacent to the sewer line. It is disputed whether or not this catch basin was tied into the sewer line or was separate. For the purposes of this motion, the Court will presume it was. Prior to 2018, Aldridge states that she did not experience flooding in the basement of 15 Spring Street. In 2018, Rossi performed or directed work on the sewer line in the area of the catch basin. This work involved excavating various sections and left the storm and sewer systems separate from each other. Rossi also caused the excavations to be filled in and covered with soil and grass seed. Following Rossi's work, Aldridge began experiencing flooding in her basement.

The problem with Aldridge claims is a bit of a donut hole. Aldridge can establish that something changed about the flow of water. She can also tie the change to the window when Rossi performed the excavation and sewer line work. For purposes of summary judgment, Aldridge can even show that some of the work likely disconnected a storm catch basin. What Aldridge cannot do it link these surrounding facts to a common core. What caused water coming off the Brightlook apartment property to flow into Aldridge's basement. Was it the storm drain? Was it the re-grading work? Or was it a corresponding shift and aging of the foundation at 15 Spring Street? Was it increased rainfall? Was it a natural shift in the ground causing water to shift? The evidence only provides possibilities, not probabilities. That is why an expert is needed to explain why the water

coming off the hill now flows differently and to link this difference to the impacts that Aldridge has sustained.

As plaintiff, Aldridge has the obligation to the element of proximate causation for both the trespass and negligence claims associated with her claim of water trespass. This generally requires some expert testimony connecting the alleged changes to the resulting flow changes. Even in cases where the change is above ground and undisputed, the Court has required an expert witness to explain the connections and to provide a foundation for a court or jury to find that the changes proximately caused the injuries. See *VTRE Investments, LLC v. Montchilly, Inc.*, Dckt. No. 127-7-17 Lecv, 2019 WL 9573861, at \*8–9 (Aug. 13, 2019) (Shafritz, J.) (collecting cases requiring expert witnesses to establish causation in water trespass cases); see also *Canton*, 171 Vt. at 553 (affirming jury's reliance on expert's testimony concerning causation from a man-made culvert). Without this testimony and foundation, Aldridge can only off lay-opinion about what she believes was the cause. This is not sufficient as it only creates a possibility and not a probability. *Blanchard v. Goodyear Tire and Rubber*, 2011 VT 85, ¶ 5 (noting that a plaintiff must be able to point to evidence suggesting a probability rather than a mere possibility of proximate cause to survive summary judgment).

Based on this analysis, Defendants Brightlook, LLC and Rossi are entitled to summary judgment on the portions of Aldridge's claims of trespass and negligence to the extent that they seek compensation for water trespass for failure to establish proof of proximate cause linking any work or alleged changes to the area above 15 Spring Street to the later flooding issues that Aldridge experienced. These portions of Aldridge's negligence and trespass claims are dismissed.

*ii.    Fraud*

Defendants next seek summary judgment on Aldridge's claim for fraud. The elements of fraud are as follow:

> An action for fraud and deceit will lie upon an **intentional misrepresentation of existing fact**, affecting the essence of the transaction, **so long as the misrepresentation was false when made and known to be false by the maker**, was not open to the defrauded party's knowledge, and was relied on by the defrauded party to his damage.

*Silva v. Stevens*, 156 Vt. 94, 102 (1991) (quoting *Union Bank v. Jones*, 138 Vt. 115, 121 (1980)) (emphasis added).

In this case, Aldridge alleges that when she spoke with Rossi about the work that he was doing on the sewer lines, he told her that his lawyer would call her. Aldridge contends that she acted in reliance on Rossi's representations and left the work site with the expectation that Rossi's attorney, who she knew, would contact her and discuss the work being done. No such call occurred. Aldridge claims that Rossi knew that his attorney would not call Aldridge, but the evidence does not support this conclusion. There is no evidence that Rossi knew that his attorney would not call Aldridge. In fact, the record is not clear whether Rossi intentionally did not call, forgot to call, or did call but for other reasons, the attorney did not call. Without such evidence there is no way for a jury to conclude the representation that Rossi made was a misrepresentation of existing fact or that the statement was false or that he knew the statement to be false at the time.

Without evidence of these essential elements, Aldridge's claim for fraud against Defendants Brightlook, LLC and Rossi fail for lack of proof as a matter of law. Defendant's Motion for Summary Judgment on this claim is **Granted** as a matter of law.

### iii.     Intentional Infliction of Emotional Distress

Defendants seek summary judgment on Aldridge's claims of intentional infliction of emotional distress. This claim requires a plaintiff to establish that the defendant's actions included "outrageous conduct, done intentionally or with reckless disregard of the probability of causing emotional distress, resulting in the suffering of extreme emotional distress, actually or proximately caused by the outrageous conduct." *Crump v. P& C Foods*, 154 Vt. 284, 296 (1990) (quoting *Sheltra v. Smith*, 136 Vt. 472, 476 (1978)). As the Vermont Supreme Court has noted:

> The standard for establishing outrageous conduct is a necessarily high one. The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community."

*Dalmer v. State*, 174 Vt. 157, 171 (2002) (quoting the Restatement (Second) of Torts § 46 cmt. d). The question of what constitutes such outrageous and extreme behavior is an objective one that lies first with the Court. *Fromson v. State*, 2004 VT 29, ¶¶ 14–17. Aldridge's basis for this claim are that Rossi knew he was causing her harm, that he refused to contact or respond to her or to resolve her claims and did not provide redress or remediation. (Pltf. Opp. to Def. Mot. For Summ. J. at 11–12). These facts, however, are not sufficient to allow a jury to reasonably find that Rossi's action constituted the intentional infliction of emotional distress. As the Court notes in *Fromson*, it has long

rejected basing a claim of intentional infliction of emotional distress upon a plaintiff's perceptions of defendant's motives or by combining a series of events without showing a significant outrageous act. *Fromson*, 2004 VT 29, at ¶¶ 16, 17 (collecting cases). In this case, the evidence is not so much that Rossi did something outrageous, it is that he refused to negotiate, remediate, or resolve the dispute. Such actions may be wise or unwise, and they may be moral or immoral, but they are not outrageous. A party has no obligation to negotiate or remediate if she did not cause the damage claimed. Given that the cause of the flooding is and has been disputed, the Cout cannot find a refusal to act to be outrageous or extreme. As such, Aldridge's claim does not meet the necessary threshold of demonstrating outrageous or extreme conduct that could support a claim or findings of intentional emotional distress.

Based on the foregoing, Defendant Brightlook, LLC and Rossi's motion for summary judgment on Aldridge's claim of intentional infliction of emotional distress is **Granted**, and the claim is dismissed as a matter of law.

  *iv. Punitive Damages*

Defendants' final basis for summary judgment seeks to dismiss Aldridge's claim for punitive damages. A claim for punitive damages requires evidence of (1) wrongful conduct that is outrageously reprehensible and (2) malice. *Fly Fish Vermont, Inc. v. Chapin Hill Estates, Inc.*, 2010 VT 33, ¶ 18. This has sometimes been compared to behavior with the same characteristics of a crime. *Follo v. Florindo*, 2009 VT 11, ¶ 44. Aldridge does not point to any specific behavior to support her claim for punitive damages but focuses on the harm she has incurred. While such harm is serious, the normal remedy is through damages, which are not limited in scope once liability and causation are established. *Canton*, 171 Vt. at 552–53 (affirming award for flood damages sustained to downhill home and property based on water flowing from defendant's quarry, through a surface culvert into plaintiff's home). Without evidence of either wrongful conduct or malice, there is nothing for a jury to make a finding for punitive damages, and the claim for punitive damages fails as a matter of fact and law.

Based on the foregoing, Defendants Brightlook, LLC and Rossi's Motion for Summary Judgment against Aldridge's claim of punitive damages is **Granted**. The claim for punitive damages is dismissed for lack of factual basis and as a matter of law.

# ORDER

Plaintiff Aldridge's Rule 36 motion for sufficiency is denied for lack of conference under Rule 26(h), but it may be renewed to the extent that the parties are unable to resolve their issues through good faith conference and to the extent that any components remain relevant in light of the Court's decision on Defendants' Summary Judgment.

The Court **Grants** Defendants Brightlook, LLC and Rossi's Motion for Summary Judgment as follows. The claims against Defendants concerning negligence and trespass arising from Plaintiff Aldridge's claim of water trespass are **Dismissed** as a matter of law for failure to establish proximate cause. Plaintiff Aldridge's other negligence and trespass claims that were not sought for summary judgment survive and remain **pending**. Plaintiff's Aldridge's claims of fraud, intentional infliction of emotional distress, and punitive damages are **Dismissed** as a matter of law fo lack of evidence necessary to establish the essential elements of this claim.

Plaintiff Aldridge has indicated that the parties have scheduled a January 2024 mediation in this matter. The Court will set a status conference after this mediation if the parties are unsuccessful in resolving their remaining claims.

Electronically signed on 12/7/2023 1:34 PM pursuant to V.R.E.F. 9(d)

Daniel Richardson
Superior Court Judge