VERMONT SUPERIOR COURT
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT 05401
802-951-1740
www.vermontjudiciary.org

ENVIRONMENTAL DIVISION
Docket No. 25-ENV-00047



| | |
|---|---|
| Town of Whitingham,<br>    Plaintiff,<br><br>v.<br><br>Two Lakes, LLC et al.,<br>    Respondents | **MERITS DECISION** |

This is a zoning enforcement action brought by the Town of Whitingham (Town) against Respondents, Two Lakes LLC and Mr. Christopher Roberts (together, Respondents)[1] for the unpermitted construction of an accessory dwelling unit (ADU) at 6492 Route 100, Whitingham, Vermont (the Property).

The Court held a one-day merits hearing via Webex on March 18, 2026. The Town appeared and is represented in this matter by Attorney Robert Fisher. Respondents appeared and are represented in this matter by Attorney Ronald Ferrara. Following trial, the Court offered the parties an opportunity to file post-trial memoranda, which were due on March 31, 2026.[2] Thereafter, the Court took the matter under advisement.

## Findings of Fact

1. Respondents own the property located at 6492 VT Route 100 in the Town, known locally as "Sawyer Mansion" (the Property). The Property is approximately 3 acres and is in the Town's Village District as that term is defined by the Town of Whitingham Zoning Regulations (the Regulations).

2. The Property has frontage on Route 100 and its driveway is located almost directly opposite (and across Route 100) from Sadawga Lake.

---

[1] The Court understands that Mr. Roberts is the sole member and owner of Two Lakes LLC.

[2] Respondents filed a post-trial memorandum; the Town did not.

3. There is an unnamed stream that parallels the easterly side of Respondents' gravel driveway and runs from Sadawga Lake into Harriman Reservoir, a well-known swimming/recreation area.

4. Prior to Respondents' ownership, the Property was developed with a principal structure, approximately 7,000 square feet in size, most recently used as a bed and breakfast.

5. In 2023, Respondents obtained a permit to change the use of the principal structure on the Property to a single-family dwelling.

6. Mr. Roberts also owns two other properties in the Town. First, he owns a lakeside lot off Tyanoga Drive, adjacent to Sadawga Lake (located approximately 300 to 350 feet from the Property), which is developed with a "shipping container"-style dwelling and a "tiny home" on wheels. Second, he owns a store in Jacksonville, a village in the Town.[3]

7. At the time that he purchased the tiny home, Mr. Roberts also purchased a construction trailer on wheels. The construction trailer sat in the driveway of the Property for approximately a year and a half and then was moved to the back side of the Property.

8. Mr. Roberts lives at the Property, although his occupancy has been "off and on" because he has been traveling back and forth to Connecticut to help care for his mother, who has significant health issues.

9. Previously, Mr. Roberts had claimed to be living at the Tyanoga Drive property to obtain a permit for an ADU at that location, and he had also stated to the Town's Zoning Board of Adjustment (ZBA) that he was living in an apartment located on the Jacksonville Village store property.

10. In late February or early March of 2025, Mr. Roberts moved the construction trailer back to the driveway, adjacent to the stream, so that he could have access to power while he worked on the trailer. In pursuit of his ultimate goal of forming a dwelling structure similar to the one on the Tyanoga Drive property, Mr. Roberts brought in two shipping containers that could be attached to each other and to the construction trailer.[4]

11. Taken together, the construction trailer (390 square feet) and the two shipping containers (40' x 8' each multiplied by 2) total approximately 1030 square feet and would contain two bedrooms.

---

[3] The Court understands that the Town has issued a separate notice of violation to Mr. Roberts for non-compliance with permit/zoning regulation requirements on the Tyanoga Drive property, but no enforcement action has been commenced. See In re Two Lakes LLC ZBA Denial #W-10-21 & #W-22-25, Docket No. 25-ENV-00105 (Feb. 4, 2026) (McLean,J.) (dismissing appeal from zoning board decision upholding notice of violation).

[4] As conceptualized, the construction trailer would ultimately be cantilevered on top of the two shipping containers, which would be welded together, with entryways, windows and decking installed in various locations.

12. Although the two shipping containers are welded together, the ADU on the Property is not attached to any utilities, nor is it attached to the ground.

13. Mr. Roberts had not determined at the time he began work (or thereafter) precisely where the completed structure would be sited. He considered leaving it on the Property but also contemplated moving it to Tyanoga Drive.[5]

14. In furtherance of the possibility of leaving the accessory structure on the easterly side of the Property's driveway, in March 2025, Mr. Roberts, Gisela Zboray, the Town's Zoning Administrator (the Zoning Administrator), and Josh Carvajal, a representative of the State of Vermont Watershed Management Division (Rivers Program) met on site to examine the proposed location adjacent to the stream. The State's representative did not raise an objection to the location, provided the stream bank was not impeded.

15. On April 1, 2025, before any work—or at least any substantial work—on the accessory structure had begun, the Zoning Administrator wrote to Mr. Roberts providing him with an application for a zoning permit, identifying Regulations § 6.1.1.a.5 regulating accessory dwelling units, and further identifying two issues—owner occupancy and sanitation—that would have to be addressed before she could approve the application.[6]

16. That same day, Mr. Roberts completed a zoning application for an accessory dwelling unit on the Property and submitted a check to the Town for the application fee in the amount of $184.

17. On April 2, 2025, the Zoning Administrator followed up with Mr. Roberts via email, explaining the need for a homestead declaration and its significance in the context of the application, as well as instructions on how to obtain one.

18. That same April 2, 2025 email also requested information from a septic company stating that they had inspected the septic system on the Property and found it in proper working order, and that the system had sufficient capacity for both the principal dwelling and the number of bedrooms anticipated for the ADU.

19. Following receipt of the April 1, 2025 letter, Mr. Roberts approached the Town about the possibility of extending a municipal sewer line along Route 100 to the Property. In furtherance of this idea, a site visit was conducted that included Vermont Agency of Transportation (VTrans) engineers.

20. The sewer line was not extended to the Property.

---

[5] There is no allegation in this case that the ADU has ever been occupied.

[6] Mr. Roberts had previously informed the Zoning Administrator of an issue with the septic at the Property.

21. Additionally, sometime after April 1, 2025, Mr. Roberts consulted with a wastewater engineer regarding sewer options for the accessory dwelling and retained Uncle Bob's Septic Service to evaluate the existing on-site wastewater system. After clearing the lines and resolving an issue with a sump pump, Uncle Bob's Septic Service reported that the existing septic system was served by a 1,500-gallon concrete tank in good condition. However, no information was provided regarding how many bedrooms the system could serve, nor was a wastewater/water supply permit received from the Agency of Natural Resources (ANR).

22. Based on Uncle Bob's work on the existing septic system/leach field, Mr. Roberts believed that the existing system would support both the Sawyer Mansion building and the ADU.

23. On April 14, 2025, the Zoning Administrator rejected the application and notified Mr. Roberts by letter that she could not approve the application until he: (1) submitted proof that the Property would be owner-occupied by providing her with a copy of a homestead declaration and (2) provided her with a copy of a State water supply/wastewater permit demonstrating adequate septic capacity for a second dwelling unit. The Zoning Administrator returned the check and informed Mr. Roberts that he could resubmit the application when he had the required documentation.

24. Mr. Roberts did not provide the Zoning Administrator with either a homestead declaration or a copy of proper ANR wastewater permitting and continued to work on the ADU.

25. On May 2, 2025, the Zoning Administrator sent Respondents a zoning notice of violation and cease and desist order via certified mail (the NOV) and hand delivery. Mr. Roberts signed the certified mail receipt on May 6, 2025.

26. The NOV identified the bylaw provision alleged to be violated, outlined the facts giving rise to the violation, indicated that an appeal could be taken within 15 days to the ZBA and expressly stated that failure to appeal within that period would render the notice of violation the final decision on the violation.[7]

27. The NOV also informed Respondents that they had 7 days to cure the violation.

28. The NOV also directed Mr. Roberts to cease and desist any further construction on the ADU, indicating that failure to do so would result in the Town seeking injunctive relief.

29. Mr. Roberts did not appeal the NOV nor was the violation cured within the cure period.

---

[7] The NOV also outlines the reasons why Mr. Roberts' zoning application for an ADU was rejected, including for the first time reference to the building design as not compatible with "New England style architecture" (a requirement in the Village District per Regulations § 5.1.4.c, but a term not defined therein) and inappropriate building materials/siding. As noted herein, Mr. Roberts began siding the accessory dwelling unit with cedar wood siding following receipt of the NOV.

30. At the time that the NOV was issued, the Regulations, adopted October 21, 2021, were in effect.

31. Following receipt of the NOV, Mr. Roberts stopped most work on the two shipping containers, but he continued work on the construction trailer, asserting that he had been advised by an attorney that he could work on the trailer since it was on wheels. He also added cedar siding to the ADU.

32. The shipping containers are larger than 120 square feet and therefore do not qualify as "Small Structures" that are exempt from permitting requirements under the Regulations.

33. Under the Regulations, a structure placed or erected without a permanent foundation or footings and which is removed within a two-year period does not need a zoning permit. A permit must be acquired, however, if the structure remains for longer than two years.

34. It is not permissible to have three different principal residences in Town.

35. Mr. Roberts is willing to move the ADU to the back of the Property or to the Tyanoga Drive property.[8] Moving the ADU to the Tyanoga Drive property would implicate other requirements under the Regulations and the need for additional or amended permits.

36. Moving the accessory structure would involve breaking the weld between the shipping containers and loading the various pieces onto and off of a flatbed truck and/or trailer with a crane and perhaps hiring flaggers (if the structure is to be moved over public highways).[9] The cost of this work is estimated at $15,000.

37. Mr. Roberts has limited funds in the bank currently.

38. There is a risk that the construction trailer and containers could be damaged if moved over highways because of doorway and window openings cut into the containers causing structural instability. The trailer also may not be road-worthy.

39. Other than his two other properties in the Town, Mr. Roberts does not own other property to which the ADU could be moved.

40. Moving the accessory structure either to a different location on the Property or to Tyanoga Drive would be easier once spring/summer arrives and the ground begins to dry out.

---

[8] There is a large parking lot associated with the Jacksonville property, but Mr. Roberts has been informed by the Town that moving the trailer/shipping container there would not meet zoning requirements.

[9] Selling the ADU would be difficult for this reason since any buyer would also have to address/coordinate deconstruction and transportation and the cost thereof. The Court notes, however, that logistical difficulties with obtaining compliance with zoning regulations does not absolve a violator of the need to comply with the applicable zoning regulations. Put another way, just because compliance may be difficult does not mean that compliance may be avoided or unduly delayed.

5

41. If the ADU is to be moved, Mr. Roberts has requested until the end of June to do so. The Town would like the ADU removed from the Property—and preferably from the Town—by June 1st.

42. The Town seeks penalties of $200 per day for every day the violation has continued after expiration of the seven-day cure period and injunctive relief, including an order that the shipping containers be removed from the Town.

43. The Town also seeks to recover its enforcement costs, totaling $5,937.25 as of the date of trial. The Town's attorney charges an hourly rate of $225.00. The trial itself, including further settlement negotiations between the parties and excluding the lunch hour, lasted approximately 4.25 hours.

44. The period of violation, running from seven days after the issuance of the NOV (May 9, 2025) to the date of trial (March 18, 2026) is 313 days.

### Discussion

In a zoning enforcement action, the Town has the burden of proving the existence of a violation. See In re Transtar, LLC, No. 46-3-11 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Sept. 15, 2011) (Durkin, J.) (explaining that in a zoning enforcement action, the Town bears the burden of proof). Where, as here, the NOVs were never appealed, the Town merely needs to show that the violations are ongoing and continuous for the period in which the Town seeks penalties. As the Vermont Supreme Court has explained, municipalities "need not produce evidence of a continuing violation for each and every day." City of Burlington v. Sisters & Brothers Inv. Grp., LLP, 2023 VT 24, ¶ 15 (quoting In re Jewell, 169 Vt. 604, 606 (1999)). Instead, municipalities may sustain their burden of proof with evidence that "weave[s] a sufficient pattern of violations for the court to infer a continuing violation for some or all of the period for which the [municipality] requests that the court impose penalties." Id.

As noted above, the Town's unappealed NOV has established the existence of a violation in this case and is final and binding on all parties and this Court. 24 V.S.A § 4472. Thus, it has been conclusively established that Respondents violated Regulations § 3.2 because they commenced land development without a duly issued permit from the Zoning Administrator. Accordingly, the Court's primary focus at this time is to assess an appropriate penalty amount for Respondents' violation and determine the scope of injunctive relief.

The Court is authorized to impose a fine of up to $200 per day for each day that a violation remains ongoing. 24 V.S.A. § 4451(a)(3). When assessing fines, the Court looks to the factors enumerated in 10 V.S.A. § 8010, which guide the assessment of administrative penalties from state agencies. Town of Duxbury v. Kessler, 23-ENV-00128, slip op. at 6 (Vt. Super. Ct. Env. Div. Oct.

6

28, 2025) (Walsh, J.) (quoting Town of Pawlet v. Banyai, 2022 VT 4, ¶ 30) ("When determining a fine, the Environmental Division must 'balance any continuing violation against the cost of compliance and . . . consider other relevant factors, including those specified in the Unified Environmental Enforcement Act.'") (internal citation omitted)).

The § 8010 factors are:

(1) the degree of actual or potential impact on public health, safety, welfare, and the environment resulting from the violation;

(2) the presence of mitigating circumstances, including unreasonable delay by the Secretary in seeking enforcement;

(3) whether the respondent knew or had reason to know the violation existed;

(4) the respondent's record of compliance;

(5) Repealed by 2007, Adj. Sess. No. 191, § 5, eff. July 1, 2008.

(6) the deterrent effect of the penalty;

(7) the State's actual costs of enforcement;

(8) the length of time the violation has existed.

10 V.S.A. § 8010(b).

The Town seeks a penalty of $200 per day for each day the violation continued after the expiration of the seven-day warning period in the NOV. The period of violation ran for 313 days, such that the Town's total requested penalty is $62,600. It also seeks the removal of the ADU from the Property—and from the Town—by June 1. Mr. Roberts contends that a more appropriate penalty would be payment of the Town's legal fees in addition to a $20 daily penalty, for a total penalty of $12,197.25.[10] He requests that the Court not order the removal of the ADU from the Property and instead afford him time to re-apply for an ADU permit to move the accessory structure to the rear of the Property once he has obtained the required homestead declaration and wastewater permit. The Court now turns to the factors listed in 10 V.S.A. § 8010, keeping in mind that the penalties imposed under § 4451(a) for zoning violations are remedial rather than punitive in nature. Town of Hinesburg v. Dunkling, 167 Vt. 514, 527–28 (1998).

I.      Actual or Potential Impact on Public Health/Safety/Welfare/Environment

_____

[10] The penalty amount requested in Mr. Roberts' memo was $11,757. This amount is based on an incorrect calculation of the period of violation as 291 days, rather than 313 days.

The Court finds this factor weighs in favor of a larger daily fine. At the time the ADU was installed, it was not clear the Property's existing septic system could accommodate the additional load that would be created once the accessory dwelling was in use. Further, there were existing septic issues at the Property, either due to a defective sump pump or the system itself. While Mr. Roberts ultimately engaged a septic service provider to address the issues with the existing septic system and assess the system's capacity, he constructed the ADU on the Property in the absence of substantial information regarding the wastewater system's capacity and despite having been informed that receipt of a wastewater permit (or amended permit) was a prerequisite to the Town's issuance of a zoning permit.

While the Property runs adjacent to a brook which, in turn, feeds into a reservoir that is a well-known swimming location in the Town, no actual harm to public health, safety or the environment occurred in this case. The ADU was not attached to Respondents' wastewater system and was unoccupied. No failure of the wastewater system occurred because of the ADU.

Nonetheless, there is a high degree of potential harm to public health and the environment that could have resulted from construction of an unpermitted accessory dwelling—potentially to be served by an unpermitted wastewater system—located near a stream feeding a water resource frequently used for recreational purposes. But for the intervention of the Zoning Administrator and the issuance of the NOV, it is likely that work would have continued on the ADU, including its connection to the wastewater system, despite the lack of requisite wastewater permitting, creating an indisputable potential hazard to public health.[11]

II.     Presence of Mitigating Circumstances

With respect to mitigating circumstances, we consider whether the Town has unreasonably delayed in bringing the enforcement action. 10 V.S.A. § 8010(b)(2); Town of Colchester v. Huard, 24-ENV-00069, slip op. at 5 (Vt. Super. Ct. Envtl. Div. May 22, 2025) (McLean, J.). There has been no unreasonable delay by the Town in bringing this enforcement action. The Town sent a letter rejecting Mr. Roberts' application on April 14, 2025 and the NOV on May 2, 2025. It filed a complaint with this Court on June 24, 2025. Thus, this factor does not support reduction of the penalty amount based on unreasonable delay.

---

[11] Although Mr. Roberts testified that he had not decided where the ADU would ultimately be located, he took steps—including meeting with a representative of the Watershed Management Division and welding the shipping containers together in the driveway of Sawyer Mansion—that strongly indicate that the ADU would remain on the Property in its current location. Further, the Court's conclusion that it is likely that construction on the ADU at the Property would have continued is supported by the fact that Mr. Roberts continued construction following both the Zoning Administrator's denial of his permit application and the NOV.

The fact that the ADU is potentially permittable in its current location offers some potential for mitigation here. Although Mr. Roberts began work without a zoning permit, and continued aspects of the work after the NOV had issued, it is conceivable that Respondents could obtain a zoning permit for the ADU on the Property by submitting a new or amended application to the Zoning Administrator and providing her with the wastewater and owner-occupancy information that was missing from the original permit application (assuming all other relevant requirements of the Regulations are met). It is undisputed, however, that the main thrust of this violation is the fact that Respondents failed to ever obtain a zoning permit for the ADU. Thus, the potential for approval should Respondents have actually pursued compliance with the Regulations by seeking and obtaining the required permit is somewhat cold comfort given the fact that the lack of such activities occurring (over a period of approximately one year) is functionally why Respondents are before the Court today.

III.    Respondent's Knowledge of Violation/Record of Compliance

Both the third (Respondent's knowledge of the violation) and fourth (Respondent's record of compliance) factors weigh in favor of a larger daily fine. The record in this case clearly indicates that Mr. Roberts knew he could potentially be in violation of the Regulations, at the very latest, the same day he applied for his ADU permit on April 1, 2025. On that day, the Zoning Administrator sent him a letter specifically highlighting the owner-occupancy and wastewater permit requirements for ADUs under the Regulations. Town's Exhibit C. The letter clearly identifies these regulatory provisions and the particular elements thereof that the Zoning Administrator thought could prevent approval of Mr. Roberts' application. Most notably, this included a lack of clarity regarding whether Mr. Roberts occupied the Property and the lack of a wastewater permit. The Zoning Administrator rejected the application by letter on April 14, 2025, confirming that Mr. Roberts' application had been rejected due to lack of a wastewater permit and a homestead declaration required to prove owner-occupancy. Town's Exhibit D. Despite the rejection, Respondents continued work on the Property, leading to the NOV. Town's Exhibit E. As such, it is clear Mr. Roberts had reason to know the violations existed and allowed them to continue, and this factor weighs in favor of a larger daily fine.

Regarding the fourth factor, the Court heard testimony from both parties on the issue of Respondents' record of compliance. Some of this testimony consisted of accounts of alleged issues or potential zoning violations on Mr. Roberts' other properties, which are not before the Court. In relation to the Property at issue here, the parties appear to agree that Mr. Roberts ceased work on the two shipping containers following receipt of the NOV, but continued work on the construction trailer on wheels. While Mr. Roberts may have been confused or received conflicting advice as to the

9

purpose of the seven-day cure provision in the NOV, it is not legitimately disputed that the violation was not cured during this period.

The Town sent Mr. Roberts the NOV on May 2, 2025, which contained instructions for curing the violations or appealing the NOV to this Court. The grace period exists to cure violations cited therein, meaning that the violations cited no longer exist by the time that the cure period ends. Most notably, this violation included constructing and/or installing an ADU without the necessary zoning permit. The most obvious cures for this violation would be to either acquire the necessary permitting for the ADU or deconstruct the dwelling entirely. The cure period does not exist to allow a respondent to continue the activity that prompted the NOV, which should be ceased immediately, for an additional seven days.

That Mr. Roberts misinterpreted language within the NOV stating that "In the meantime, you are hereby ordered to cease and desist from any further construction of the accessory dwelling unit . . . ," id. (emphasis added, emphasis in original removed), is largely irrelevant to the Court's analysis. Again, the cure period exists to, one way or another, afford a violator the opportunity to completely cure the violations cited within the NOV. It is undisputed that Respondents did not acquire a wastewater permit, homestead declaration, or zoning permit during the cure period, and did not deconstruct the ADU (as it existed at that point). Whatever the reason, their continued work during this period further supports that the violation was not resolved by the end of the cure period and continued through to the date of trial.

While the Court has received testimony that there may be other zoning issues at Respondents' other properties that are similar to the matter at issue in this case, we have yet to receive direct evidence of outstanding notices of violation or enforcement actions related to those alleged violations, or any evidence of previous NOVs for this violation or others at the Property. Even so, Respondents have allowed the violation at issue to continue despite clear notice and have not cured at any point in time. For these reasons, both factors three and four weigh in favor of a larger fine.

IV.  Deterrent Effect of Penalty

The penalty amount should be sufficient to deter Respondent from continuing to violate the Regulations.[12] Put differently:

---

[12] The Court notes that some aspects of this factor may consider the general deterrent effect of the penalty on the broader community to encourage, if not ensure, community-wide compliance with the Regulations. This is generally consistent with the overarching purpose of enforcement actions, which are to further the public interest in compliance with applicable regulations. The Court need not conduct an extensive analysis of these goals, given that both are functionally intrinsic to the application of the factors to this case and the Court's ultimate conclusion.

10

> A civil penalty in a zoning or environmental enforcement case should be calculated so as to make it more expensive for defendants to violate the law than to comply with it. To fail to impose an appropriate penalty on a . . . [respondent] who proceeds with a project after being notified of the violation makes a mockery of the great majority of citizens who apply for and abide by zoning permits and other municipal land use approvals.

Town of Calais v. Noordsij, No. 142-6-06 Vtec (Aug. 29, 2008) (Wright, J.).

While the evidence regarding Mr. Roberts' full financial circumstances is unclear, he has incurred costs to defend this enforcement action and will incur additional costs to bring the Property into compliance, potentially including those generated by relocating the ADU. Presently, he has a limited ability to pay any substantial penalty amount in full and favors installment payments. Taking into account the remedial goals of § 4451 (including both specific and general deterrence), the costs of enforcement and compliance and Respondents' ability to pay, among other factors, the Court concludes that this factor weighs in favor of a moderate daily fine. This is because Respondents have allowed the violations at issue to languish despite having knowledge of them (and the potential to cure them) for approximately a year. Further, Mr. Roberts has been given clear instructions on what is needed to obtain the necessary permitting for the ADU at the Property. Despite acknowledging that he could pursue those action items to obtain necessary permitting, he still has not taken all reasonable and necessary steps to secure a zoning permit.

Despite this, the penalty amount proposed by Mr. Roberts (coverage of the Town's actual costs of enforcement plus $20 per day for every day of violation) exceeds what is necessary, in the context of this case, to deter future violations by him or others. Accordingly, the Court imposes a penalty somewhat lower than Respondents' own proposal. This amount, coupled with the other costs that Respondents have or will incur is sufficient to deter future violations by Mr. Roberts and encourage compliance with the Zoning Regulations generally.

V.     Actual Costs of Enforcement

The Town's actual costs of enforcement in this matter were $5,937.25. Town's Exhibit G. Respondent does not challenge the Town's enforcement costs, which consist entirely of legal fees charged by the Town's attorney. The Court has reviewed the Town's enforcement costs and concludes that they are reasonable under the circumstances.[13] This weighs in favor of a larger daily fine.

---

[13] The Town has not expressly asked that the penalty amount in this case cover its trial expenses, but the penalty imposed herein is sufficient to cover that cost as well.

VI.     Length of Time Violation Has Existed

At the time of the hearing, the violation had existed for 313 days. This is a significant amount of time, particularly considering that Respondents have functionally been aware of this violation from the date they applied for the underlying zoning permit. Thus, this weighs in favor of a larger daily fine.

VII.    Fine Imposed

For all of the foregoing reasons and with consideration of the above factors, the Court imposes a penalty of $30 per day for every day of violation, running from May 9, 2025 to March 18, 2026 (313 days) for a total fine of $9,390.00 to be paid to the Town within 180 days of the date of this order. The parties are free to agree to a mutually acceptable repayment schedule, provided that such schedule ensures repayment in full within the imposed deadline. This fine shall constitute a lien on the Property.

VIII.   Injunctive Relief

The Town seeks a mandatory injunction requiring removal of the ADU from the Property and, preferably, from the Town. The Vermont Supreme Court held in Town of Sherburne v. Carpenter, 155 Vt. 126, 131–32 (1990), and has subsequently reiterated, that "[i]f the zoning violation is substantial and involves conscious wrongdoing, the . . . [municipality] is entitled to an injunction, including a mandatory injunction to remove an offending structure, as a matter of course." See Fenwick v. City of Burlington, 167 Vt. 425, 435 (1997) (citation omitted). The evidence in this case indicates that the violation was both substantial (i.e., Respondents constructed a 1,030 square foot structure without a zoning permit) and involved conscious wrongdoing (i.e., Respondents knew before he commenced work a zoning permit was required). Therefore, the Town is entitled to injunctive relief, including a mandatory injunction.[14]

However, in recognition of Mr. Roberts' testimony that he seeks to obtain compliance with the Regulations and general logistical considerations related to moving the ADU immediately, the Court imposes the following injunctive relief—the ADU must be removed from the Property within 60 days of the date of this order. Should Respondents seek and obtain all necessary permitting, which

_____

[14] While the Town is entitled to an injunction, including a mandatory injunction to remove the ADU from the Property, it is not clear that the Court may order Respondent to remove the structure from the municipality, as the Town requests, if it can be lawfully relocated to another property in Whitingham owned by Respondent (or permitted in its present location, as discussed below). The Court makes no conclusion as to whether the ADU can be lawfully moved to another property in the Town and notes that it appears undisputed that additional permitting would be required to facilitate that relocation. Nothing in this decision seeks to authorize Respondents to move the ADU to another location in the Town without necessary permitting either from the Town or any other entity that may have regulatory authority over such action.

12

would include not only a wastewater permit but also the requisite zoning permit from the Town (which would also presumably require the filing of a homestead declaration), during this 60-day period, the ADU may remain at the Property pursuant to the terms of that permitting.[15]  Failure to obtain the necessary permitting, however, means that the ADU must be removed from the Property by the expiration of that period. Respondents are responsible for all costs and fees associated with any permitting required and/or any costs of removal of the ADU from the Property.

### Conclusion

This concludes the matter before the Court.  A Judgment Order accompanies this Decision. Electronically signed this May 1, 2025 pursuant to V.R.E.F. 9(D).

Joseph S. McLean
Superior Court Judge
Environmental Division

---

[15] This order shall not foreclose Mr. Roberts from applying for necessary Town permits and approvals to relocate the ADU to one of his other properties in the Town, should he choose to do so, subject to the same 60-day deadline. Further, if Respondents have taken good faith, concrete steps in furtherance of obtaining necessary Town permits, the parties may stipulate or agree to an extension of the 60-day period, without further action by the Court, to allow for final resolution of their application(s).  Extension may only be allowable, however, by express stipulation or Court order.